106 T.C. No. 7


UNITED STATES TAX COURT


MICHAEL W. AND CHARLOTTE S. PHILLIPS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4745-94.                    Filed March 7, 1996.


        Ps contend that they avoided recapture of an
investment credit claimed with respect to property of a
partnership subject to secs. 6221 through 6231, I.R.C.,
as a result of filing an amended return revoking the
credit subsequent to the disposition of the property.
<u>Held</u>:  The amended return was ineffective because it
did not conform to the requirements of an
administrative adjustment request under sec. 6227,
I.R.C.  <u>Held</u>, <u>further</u>, Ps were required to take into
account their distributive share of the partnership
investment credit, and conversion of their partnership
items to nonpartnership items pursuant to the filing of
a bankruptcy petition did not affect this obligation,
nor preclude R's use of a prospective partnership level
settlement as the basis for computing Ps' personal tax
liability.


<u>Joseph B. Schimmel</u> and <u>Alan R. Chase</u>, for petitioners.

<u>Ellen T. Fribourg</u> and <u>James P. Dawson</u>, for respondent.

OPINION

LARO, Judge:  Michael W. and Charlotte S. Phillips petitioned the Court for redetermination of deficiencies determined by respondent for their 1984 and 1986 taxable years in the amounts of $25,471 and $69,714, respectively.  After petitioners conceded the deficiency for 1984, the sole issue for decision is whether petitioners avoided recapture of an investment credit claimed for property of a partnership subject to sections 6221 through 6231[1] (the partnership provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324) as a result of filing an amended return revoking the credit subsequent to the disposition of the property.  We hold that they did not avoid recapture.

## Background

This case was submitted to us fully stipulated.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  A summary of the facts relevant to our decision is as follows.

Petitioners resided in Miami, Florida, at the time they petitioned the Court.  During the years 1985 and 1986 they were partners in Ethanol Partners, Ltd. I (Ethanol).  The Schedules K-1 they received from Ethanol for taxable year 1985 reported property eligible for regular investment credit in the total

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

amount of $1,145,508.  On Form 3468, Computation of Investment
Credit, which they submitted with their joint Federal income tax
return for 1985, petitioners calculated the amount of their
available credit with respect to regular investment credit
property as $114,551 and the amount of their available credit
with respect to business energy investment credit property as
$114,000, for a total of $228,551, based on the Schedules K-1.
Of this total amount, they claimed $45,824 as a credit against
their tax liability for 1985, leaving a total unused investment
credit of $211,492.[2]  In 1986 petitioners filed an amended
Federal income tax return for 1984, on which they claimed a
refund resulting from the carryback of $25,471 of the unused
investment credit for 1985.  On their joint Federal income tax
return for 1986 petitioners used $118,179 of the balance of the
unused investment credit to offset recapture tax incurred
pursuant to section 47(a) on certain Ethanol equipment disposed
of in that year.

A notice of final partnership administrative adjustment
(FPAA) was mailed to the tax matters partner of Ethanol on
December 5, 1991, and a timely petition for readjustment was
filed with this Court on April 30, 1992.  At some time in early
1992, prior to the filing of the petition on behalf of Ethanol,
petitioners filed amended Federal income tax returns on Form
1040X for both the 1985 and 1986 taxable years.  On their amended
return for 1985 they recalculated their tax liability, deleting

---

[2] In the calculation of the carryback/carryforward
alternative minimum tax for 1985 the amount of $28,765 is added.

the investment credit of $45,824 as well as a deduction of $90,174 which they had claimed as their share of a partnership loss. They reported additional tax due in the amount of $57,459. On their amended return for 1986 they recalculated their tax liability, deleting a deduction of $162,008 which they had claimed as their share of a partnership loss, and reported additional tax due of $19,257. They supplied the following explanation for these adjustments on both returns:

> We have been advised that the I.R.S. is auditing the tax return of Ethanol Partners Ltd 59-2548638 Registration #8605000826 and wish to reverse the loss and credits taken on this return for Ethanol Partners in order to stop the interest charges.

The amended returns were not accompanied by a Form 8082, Notice of Inconsistent Treatment or Amended Return. Petitioners have never made payment of the additional tax liability shown on the amended returns. The additional taxes were assessed on April 9, 1992.

On December 18, 1992, petitioners filed a petition for bankruptcy under chapter 7 of the Federal Bankruptcy Code with the U.S. Bankruptcy Court for the Southern District of Florida. Respondent did not file a proof of claim with the bankruptcy court, and the court did not make a determination of petitioners' tax liability. Petitioners received a bankruptcy discharge pursuant to 11 U.S.C. section 505 on May 17, 1993.

On December 16, 1993, respondent timely mailed to petitioners a notice of deficiency for the 1984 and 1986 taxable years. The deficiencies were determined on the basis of a

prospective settlement of the partnership proceedings, pursuant to which the business energy investment credit would be disallowed for 1985, while a regular investment credit would be allowed for 1985 and then subject to recapture in 1986. Consistent with this settlement, respondent determined petitioners' share of the investment credit for 1985 to be $114,000 and their recapture liability for 1986 to be $63,270. The settlement with Ethanol was finalized and decision was entered by this Court on May 19, 1994.

<u>Discussion</u>

This opinion is concerned only with the regular investment credit claimed by petitioners, which respondent for the most part allowed. The business energy investment credit which petitioners also claimed and which respondent disallowed is not at issue and may be disregarded. Petitioners' main argument may be summarized as follows. There can be no liability for recapture of an investment credit that was not used. Use of an allowable investment credit is optional. Although petitioners originally claimed an investment credit on partnership section 38 property for the 1985 taxable year, they subsequently filed an amended return deleting the credit. By assessing the additional tax shown on the amended return, respondent allowed them to revoke their original claim. This left them in the same position as if they had never claimed the credit.[3] Accordingly, when in 1986

_____

[3] Petitioners conveniently overlook the fact that when they recalculated their tax liability on the amended return for 1986, they neglected to delete the investment credit carryover that
(continued...)

there was a disposition of the section 38 property, they incurred no recapture liability under section 47(a) and section 1.47-6, Income Tax Regs.  We disagree.

Assessment of additional tax liability shown on an amended return does not estop the Commissioner from refusing to recognize the amended return upon subsequent audit.  Courts have repeatedly upheld the Commissioner's authority to determine a taxpayer's liability without regard to an amended return that was previously accepted.  Burnet v. Porter, 283 U.S. 230 (1931); Bird v. United States, 241 F.2d 516 (1st Cir. 1957); Polt v. Commissioner, 233 F.2d 893 (2d Cir. 1956), affg. Estate of Dula v. Commissioner, 23 T.C. 646 (1955); Melahn v. Commissioner, 9 T.C. 769 (1947) (Court reviewed).[4]  As these cases illustrate, assessment of additional taxes shown on an amended return is routine IRS procedure.[5]  To ascribe to this essentially

---

(...continued)
offset $118,179 of tax liability.  Thus they have in fact used more of the credit than they acknowledge.  The logic of their position would also require the filing of an amended return for 1984 deleting the credit carried back to that year, a point they belatedly admitted by conceding the deficiency for 1984.

[4] Contra Daniels Jewelers v. United States, 150 Ct. Cl. 525, 279 F.2d 226 (1960), in which the court was evidently troubled by the Commissioner's inconsistency in retracting earlier acceptance of the taxpayer's untimely election only for those years in which the taxpayer's tax liability would have been decreased by the election.

[5] The assessments in this case may have been too hasty.  In respondent's brief she explained that the additional tax liability shown on petitioners' amended returns for 1985 and 1986 was automatically assessed pursuant to sec. 6201(a)(1).  This provision authorizes assessment of taxes shown on the return. But this authority is subject to the restriction on assessment of a deficiency attributable to a partnership item during a period
(continued...)

ministerial act the same binding effect as a considered judgment would make little sense as a practical matter.

Respondent's ultimate rejection of petitioners' amended return for 1985 was entirely proper.  The ability of a taxpayer to amend his return creates administrative problems for a tax system in which determination and assessment of taxes are predicated on the annual accounting principle.  Pacific Natl. Co. v. Welch, 304 U.S. 191, 194 (1938); Bartlett v. Delaney, 173 F.2d 535 (1st Cir. 1949).  Allowing the taxpayer to use the benefit of hindsight to select the most favorable set of intertemporal tax consequences for his transactions would be highly prejudicial to the revenue.  Melahn v. Commissioner, supra at 776-777. Accordingly, the case law recognizes limits on the effectiveness of amended returns, generally.  Koch v. Alexander, 561 F.2d 1115,

---

(...continued)
of 150 days after the FPAA is mailed to the tax matters partner. Sec. 6225.  A "deficiency" for purposes of sec. 6225 means the excess of tax due over the amount shown on the original return plus any additional amount shown as tax on an amended return, "other than amounts of additional tax which such return clearly indicates the taxpayer is protesting rather than admitting." Sec. 301.6211-1(a), Proced. & Admin. Regs.  Treatment of the investment credits had been a matter of controversy during the audit of Ethanol and was the subject of adjustments in the FPAA. On their amended returns for 1985 and 1986 petitioners explained that their purpose in seeking to revoke the credit was merely to stop the interest charges, not to concede liability. Consequently, it appears that the assessed amounts should have been treated as part of the deficiency attributable to a partnership item.  See Powerstein v. Commissioner, 99 T.C. 466 (1992).  Yet respondent assessed these amounts only 125 days after issuing the FPAA.  If respondent's assessments with respect to the amended returns exceeded the scope of her authority, the argument that these assessments validated petitioners' amended returns becomes all the more dubious.

1117 (4th Cir. 1977); <u>Goldstone v. Commissioner</u>, 65 T.C. 113 (1975).

Additional concerns are implicated where the taxpayer is a partner and the item he seeks to change is an item that is more appropriately determined at the partnership level.  Consistent treatment of these "partnership items" for all partners is a central principle of the TEFRA unified partnership audit and litigation procedures.  See secs. 6221, 6222, 6227, 6231(a)(3); H. Conf. Rept. 97-760, at 600-601 (1982), 1982-2 C.B. 600, 662-663.  To help the Secretary monitor consistency and to facilitate coordination, the statute and regulations thereunder establish specific procedures for changing the treatment of partnership items on a partner's return.  Sec. 6227; secs. 301.6227(b)-1T, 301.6227(c)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6788 (Mar. 5, 1987).  As an express legislative prescription, these procedures apparently supersede the discretionary administrative standards and case law governing the acceptance of amended returns generally:  a partner's treatment of partnership items on his return may not be changed except in accordance with these procedures.  Sec. 301.6221-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6781 (Mar. 5, 1987).

Section 6227 provides that in order to change the treatment of a partnership item on his return the partner must file a request for administrative adjustment (RAA).  Sec. 6227(a), (c). The RAA is filed on Form 8082, Notice of Inconsistent Treatment or Amended Return, together with the partner's amended Federal income tax return.  Sec. 301.6227(c)-1T, Temporary Proced.

& Admin. Regs., <u>supra</u>.  The RAA may be filed no later than (i) 3 years after the later of the filing date or due date of the partnership return for the taxable year to which the request relates, and (ii) the date on which an FPAA is mailed to the tax matters partner with respect to that taxable year.  Sec. 6227(a).  If a request to change the treatment of a partnership item conforming to the requirements of section 6227 is received by the Secretary, he is authorized to approve it or take certain specified actions necessary for resolution of the issue through a unified partnership proceeding or through regular deficiency or refund procedures.  Sec. 6227(c).  The statute does not authorize the Secretary to consider a nonconforming request.

A partner's distributive share of investment credit is a partnership item for purposes of the TEFRA provisions.  <u>Maxwell v. Commissioner</u>, 87 T.C. 783, 790 (1986); <u>Southern v. Commissioner</u>, 87 T.C. 49, 54 (1986); sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs.  Petitioners attempted to revoke the investment credit claimed for 1985 by filing Form 1040X without Form 8082.  They filed their amended return for 1985 after respondent had mailed an FPAA to the tax matters partner and approximately 6 years after the Ethanol return for the 1985 taxable year would have been due.  Petitioners did not satisfy the statutory requirements, and consequently their amended return was not effective to change the treatment of the investment credit on their original 1985 return.[6]

---

[6] If petitioners' amended return for 1986 purported to
(continued...)

If respondent's ultimate rejection of the amended return was warranted on procedural grounds, it was also appropriate as a matter of substantive law.  A partnership is treated as a separate entity for tax accounting purposes:  in general, the determination of allowable deductions, losses, and credits arising from a business conducted in partnership form is made at the partnership level, and the decision to report these items is made at the partnership level as well.  Sec. 703.  Each partner's distributive shares of these items are determined pursuant to the partnership agreement.  Sec. 704(a).  The partner is required to take his distributive shares into account in determining his income tax.  Sec. 702(a).  The investment credit is one of the partnership items for which each partner must take into account his distributive share, determined by applying statutorily specified percentages to the share of total basis or cost of partnership section 38 property that is allocated to him under the partnership agreement and reported to him on Schedule K-1.  Former secs. 46(a), (b), and (c) (before amendment in 1990); Southern v. Commissioner, supra at 54; sec. 1.46-3(f), Income Tax Regs.

---

(...continued)
revoke the carryover of the unused portion of the credit to that year, it was likewise ineffective, but for different reasons. Carryover of an investment credit is not a partnership item, but an "affected item".  Sec. 6231(a)(5); Maxwell v. Commissioner, 87 T.C. 783, 790 (1986).  Therefore sec. 6227 is inapplicable and the general requirements for acceptance of amended returns expounded by this Court in Goldstone v. Commissioner, 65 T.C. 113 (1975) would govern.  Petitioners did not satisfy these requirements.

In the settlement that respondent reached with Ethanol, the investment credit at issue was, for the most part, allowed. Petitioners do not argue that this credit was not properly allowed or that their distributive share of the allowable credit was improperly computed.  There is no basis in the record for concluding otherwise than that the treatment of the investment credit on petitioners' original return was proper to the extent allowed by respondent, and that the treatment on their amended return was improper.

Petitioners challenge the substance of respondent's determination only on the ground that when they filed their bankruptcy petition in December 1992, partnership items on their return converted automatically to nonpartnership items by operation of law, pursuant to section 6231(b)(1)(D) and (c)(2) and section 301.6231(c)-7T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987).  This conversion had the following effects, in their view.  First, "Any TEFRA proceeding making a determination of the proper treatment of partnership items has no effect on the treatment of non-partnership items." Therefore the prospective settlement with Ethanol on which respondent relied in determining petitioners' deficiency was entirely irrelevant to their liability.  Second, the conversion of the investment credit to a nonpartnership item effectively eliminated the requirement that petitioners' treatment conform to the partnership level treatment of this item.

These arguments are based on a number of misconceptions. The regulations provide for conversion of partnership items to

nonpartnership items in order to prevent the automatic bankruptcy stay, 11 U.S.C. section 362(a), from interfering with any pending partnership proceeding. Sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., supra. The consequences of conversion are purely procedural: the partner filing the bankruptcy petition drops out of the partnership proceeding, allowing that proceeding to continue without regard to the automatic stay, Computer Programs Lambda v. Commissioner, 89 T.C. 198, 206 (1987), and requiring the Commissioner to issue a notice of deficiency to the partner, within an extended limitations period, in order to adjust any converted items, secs. 6212, 6229(f); H. Conf. Rept. 97-760, at 611 (1982), 1982-2 C.B. 600, 668. Petitioners are mistaken in believing that the conversion of their investment credit to the status of a nonpartnership item had substantive consequences for their tax liability as well. The prospective settlement on which respondent relied in determining petitioners' deficiency in December 1993, and which was finalized in December 1994, is not irrelevant to petitioners' liability. Although petitioners are not bound by a settlement to which they were not parties, the settlement was presumably based upon facts that are relevant to the determination of petitioners' distributive share of the partnership credit and to the applicability of recapture in 1986. The conversion did not in any way alter the relationship between petitioners' participation and share in Ethanol and their tax liability for the years 1985 and 1986. Petitioners could have contested the deficiency determination on the ground that it did not properly reflect the

facts relevant to their liability for these years.  They have not done so.  Respondent's determination is, accordingly, sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.