123 T.C. No. 10

UNITED STATES TAX COURT

THOMAS CORSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1025-03.          Filed August 11, 2004.

        P was an investor in a partnership involved in tax
shelter litigation in this Court.  In 1985, P entered
into settlement agreements with R, pursuant to which P
could not deduct losses in excess of payments he had
made to or on behalf of the partnership for taxable
years before 1980 or after 1982.  In 1999, after the
partnership litigation concluded, R assessed additional
income tax and accrued interest for P's taxable year
1983 attributable to P's involvement in the
partnership.  P filed a claim for abatement of the
interest.  During P's correspondence conference with R,
P provided to R a copy of the settlement agreements and
argued that he had settled the taxable year 1983.  R
refused to consider the content or effect of the
settlement agreements and denied P's request for
abatement of interest.  P then filed a petition with
this Court, appealing R's determination.  After R filed
an answer to the petition, R decided that P was
entitled to a full abatement of interest for the
taxable year 1983.  P then filed a motion with this
Court for reasonable litigation costs.

      <u>Held</u>:  The settlement agreements constituted binding agreements between P and R; settled all taxable years after 1982 with respect to the partnership; and converted the partnership items into nonpartnership items, giving R 1 year in which to assess any income tax liabilities for taxable years included under the settlement agreements' terms.  <u>Held</u>, <u>further</u>, R delayed in performing the ministerial act of assessing P's 1983 tax liability.  <u>Held further</u>, R's position in the answer was not substantially justified.

      <u>Held</u>: P is entitled to an award of reasonable litigation costs.


<u>Thomas Corson</u>, pro se.

<u>Matthew J. Bailie</u>, for respondent.


OPINION

MARVEL, <u>Judge</u>:  This case is before the Court on petitioner's motion for reasonable litigation costs filed pursuant to section 7430 and Rule 231.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the time petitioner filed the petition, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Petitioner resided in Saratoga, California, when his petition in this case was filed.

On December 12, 2003, we filed the parties' stipulation of settled issues,[1] and petitioner's motion for reasonable litigation costs.  On February 11, 2004, we filed respondent's

---

[1]On Oct. 28, 2003, we entered the parties' stipulated decision.  Then, on Dec. 1, 2003, we filed petitioner's motion to vacate the decision.  On Dec. 12, 2003, we granted petitioner's motion to vacate and filed the decision document as a stipulation of settled issues.

response to petitioner's motion. On March 15, 2004, we filed an additional affidavit of petitioner pursuant to Rule 232(d), and on March 25, 2004, we filed petitioner's reply to respondent's response.

On February 19, 2004, in petitioner's motion for leave to file a reply, petitioner requested that we schedule a hearing only if a relevant fact were in dispute. We have concluded, however, that a hearing on this matter is not necessary. See Rule 232(a)(2). In disposing of this motion, we rely on the parties' filings and attached exhibits.

Background

During the 1980s, petitioner was an investor in Boulder Oil and Gas Associates (Boulder), a partnership involved in the Elektra Hemisphere tax shelter litigation in this Court (the partnership litigation).[2] In 1985, petitioner signed Forms 906, Closing Agreement on Final Determination Covering Specific Matters, for the taxable years 1980 and 1982 (settlement agreements). The settlement agreements provided that, for taxable years before 1980 or after 1982, petitioner could not deduct losses in excess of payments he had made to or on behalf of the partnership. When petitioner executed the settlement agreements, his taxable year 1981 remained open as a result of

---

[2] See Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994).

the partnership litigation.

After the partnership litigation concluded, in a letter dated September 14, 1999, respondent explained to petitioner that respondent had adjusted petitioner's 1983 income tax return as described in an enclosed Form 4549A-CG, Income Tax Examination Changes. The Form 4549A-CG indicated that petitioner owed additional income tax for 1983 attributable to his involvement in Boulder in the amount of $766 and interest in the amount of $2,523.04.[3] On November 29, 1999, respondent assessed the additional income tax and accrued interest.

Believing that he had settled all taxable years other than 1981 when he signed the settlement agreements, petitioner first attempted to resolve the matter with the Taxpayer Advocate's Office in January 2000. Then, on August 31, 2000, petitioner submitted to respondent a Form 843, Claim for Refund and Request for Abatement, requesting an abatement of interest for the taxable year 1983. In a letter to Appeals Officer Paul Sivick dated July 31, 2001 (July 31 letter), petitioner argued that he had settled all taxable years other than 1981. As evidence, petitioner attached copies of the settlement agreements.

In a letter dated September 18, 2001, Appeals Officer Sivick addressed the arguments in petitioner's July 31 letter. Responding to petitioner's argument that he had settled all

---

[3]The interest was computed to Oct. 9, 1999.

taxable years other than 1981, Appeals Officer Sivick stated: "Your desire and belief are not the relevant factors considered under the law in abatement of interest cases. Therefore, I would not consider this argument to have any merit for purposes of a request for abatement of interest." Appeals Officer Sivick did not address the content or effect of the settlement agreements. In closing, Appeals Officer Sivick gave petitioner until October 17, 2001, to continue to present arguments.

In a notice of final determination dated July 26, 2002, respondent denied petitioner's request for an abatement of interest. Respondent explained the denial of petitioner's request as follows: "We did not find any errors or delays on our part that merit the abatement of interest in our review of available records and other information for the period from April 15, 1984 to October 9, 1995."

On January 21, 2003, petitioner filed a petition with this Court pursuant to section 6404(h) and Rule 280 seeking review of respondent's refusal to abate interest under section 6404(e). In his petition, petitioner primarily contended that, pursuant to section 6231(b)(1)(C), when the parties executed the settlement agreements, partnership items converted to nonpartnership items; the conversion to nonpartnership items triggered the 1-year statutory limitations period on assessment contained in section 6229(f) (section 6229(f) assessment period); respondent failed to

assess petitioner's 1983 tax liability during the section 6229(f) assessment period; and respondent's delay in making his demand for payment was caused by respondent's error or delay in performing a ministerial or managerial act.  In making the section 6229(f) assessment period argument in his petition, petitioner relied on Crnkovich v. United States, 41 Fed. Cl. 168 (1998), affd. per curiam 202 F.3d 1325 (Fed. Cir. 2000).

On March 7, 2003, respondent filed an answer to the petition.  In the answer, respondent maintained that his determination not to abate interest pursuant to section 6404 was not an abuse of discretion and that the interest for the taxable year 1983 was timely assessed.  Subsequently, the parties reached a settlement, under which petitioner was entitled to a full abatement of interest for the taxable year 1983.

From the preparation of the petition through the settlement of the case, Stephen Benda served as petitioner's attorney.  On January 11, 2003, petitioner had his first meeting with Mr. Benda.  Petitioner and Mr. Benda had a fee arrangement of $250 per hour.  Petitioner now seeks litigation costs in the amount of $2,676.32.[4]

---

[4]In his motion for reasonable litigation costs filed on Dec. 12, 2003 (the motion), petitioner asked that we award litigation costs in the amount of $2,536.32.  When petitioner filed his reply on Mar. 25, 2004, petitioner requested an additional $140 of litigation costs, part of which he had incurred since filing the motion.  After examining petitioner's attorney's additional
(continued...)

## Discussion

Section 7430(a) authorizes the award of reasonable litigation costs to the prevailing party in court proceedings brought by or against the United States in connection with the determination of income tax. In addition to being the prevailing party, in order to receive an award of reasonable litigation costs, a taxpayer must exhaust administrative remedies and not unreasonably protract the court proceeding. Sec. 7430(b)(1), (3). Unless the taxpayer satisfies all of the section 7430 requirements, we do not award costs. Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

Section 7430(c)(4)(A) and (B)(i) provides that a taxpayer is a prevailing party if (1) the taxpayer substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues, (2) the taxpayer meets the net worth requirements of 28 U.S.C. section 2412(d)(2)(B) (2000), and (3) the Commissioner's position in the court proceeding was not substantially justified. See also sec. 301.7430-5(a), Proced. & Admin. Regs. Although the taxpayer has the burden of proving

_____

⁴(...continued)
affidavit filed pursuant to Rule 232(d) and the attached detailed summary of costs, we conclude that the court costs and "fees paid or incurred for the services of attorneys in connection with the court proceeding" totaled $2,676.32. See sec. 7430(c)(1); see also Sokol v. Commissioner, 92 T.C. 760, 767 n.12 (1989) ("The costs incurred in seeking an award of litigation costs may be included in the award.").

that the taxpayer meets requirements (1) and (2), supra, the Commissioner must show that the Commissioner's position was substantially justified.  See sec. 7430(c)(4)(B)(i); Rule 232(e).

Respondent concedes that petitioner did not unreasonably protract the court proceeding and that petitioner meets the net worth requirement of 28 U.S.C. section 2412(d)(2)(B).  In addition, respondent does not dispute that petitioner substantially prevailed with respect to the amount in controversy.  Respondent alleges, however, that respondent's position was substantially justified, that petitioner did not exhaust the administrative remedies available to him, and that the costs petitioner claims are unreasonable.

A.  Whether Respondent's Position Was Substantially Justified

For purposes of deciding a motion for reasonable litigation costs, section 7430(c)(7)(A) defines the Commissioner's "position" as the position taken in the court proceeding.  In the present case, respondent took a position when respondent filed an answer to petitioner's petition.  See Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1991-144; Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997).

The Commissioner's position is substantially justified if it has a reasonable basis in both fact and law and is justified to a degree that could satisfy a reasonable person.  Huffman v.

Commissioner, supra at 1147 n.8 (citing Pierce v. Underwood, 487
U.S. 552, 565 (1988)); Rosario v. Commissioner, T.C. Memo. 2002-
247; sec. 301.7430-5(c)(1), Proced. & Admin. Regs.  In deciding
whether the Commissioner's position was substantially justified,
a significant factor is whether, on or before the date the
Commissioner assumed the position, the taxpayer provided "all
relevant information under the taxpayer's control and relevant
legal arguments supporting the taxpayer's position to the
appropriate Internal Revenue Service personnel."[5]  Sec. 301.7430-
5(c)(1), Proced. & Admin. Regs.

1.  Section 6404(e)(1)[6]

Under section 6404(e)(1), the Commissioner may abate part or
all of an assessment of interest on any deficiency or payment of
income tax to the extent that any error or delay in payment is
attributable to erroneous or dilatory performance of a

---

[5]"Appropriate Internal Revenue Service personnel" are those
employees who are reviewing the taxpayer's information or
arguments, or employees who, in the normal course of procedure
and administration, would transfer the information or arguments
to the reviewing employees.  Sec. 301.7430-5(c)(1), Proced. &
Admin. Regs.

[6]To the extent that petitioner's allegations in the present
case are based on sec. 6404(a)(2) and are in the nature of a
claim for abatement that is prohibited by sec. 6404(b), we do not
consider them in deciding whether respondent's position with
respect to petitioner's petition for abatement of interest under
sec. 6404(e) was substantially justified.  See sec. 6404(b);
Urbano v. Commissioner, 122 T.C. 384, 395 (2004); Kosbar v.
Commissioner, T.C. Memo. 2003-190.

ministerial act by an officer or employee of the IRS.[7]  A ministerial act means a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place.  See Lee v. Commissioner, 113 T.C. 145 (1999); sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[8]  In contrast, a decision concerning the proper application of Federal tax law, or other applicable Federal or State laws, is not a ministerial act.  See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra.

In the legislative history of section 6404(e), Congress observed that "issuing either a statutory notice of deficiency or

---

[7]Sec. 6404(e) was amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1457 (1996), to permit the Commissioner to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" or ministerial acts.  The amendment applies to interest accruing with respect to deficiencies for taxable years beginning after July 30, 1996, and is inapplicable to the instant case.

[8]The final regulations under sec. 6404 were issued on Dec. 18, 1998, and generally apply to interest accruing with respect to deficiencies or payments of tax described in sec. 6212(a) for taxable years beginning after July 30, 1996.  See sec. 301.6404-2(d)(1), Proced. & Admin. Regs.  As a result, sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), applies and is effective for interest accruing with respect to deficiencies for those taxable years beginning after Dec. 31, 1978, but before July 30, 1996.  See sec. 301.6404-2(c), Proced. & Admin. Regs.

notice and demand for payment[9] after all procedural and substantive preliminaries have been completed" is a ministerial act.  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.  Congress further provided that "a ministerial act is a procedural action * * *.  For example, a delay in the issuance of a statutory notice of deficiency after the IRS and the taxpayer have completed efforts to resolve the matter could be grounds for abatement of interest."  S. Rept. 99-313, supra at 209, 1986-3 C.B. (Vol. 3) at 209; see also H. Rept. 99-426, supra at 845, 1986-3 C.B. (Vol. 2) at 845.

Similar to the issuance of either a notice of deficiency or a notice and demand for payment, the assessment of tax is a procedural action that does not require the use of judgment or discretion.  In Fruit of the Loom, Inc. v. Commissioner, T.C. Memo. 1994-492, affd. 72 F.3d 1338 (7th Cir. 1996), we observed that "Assessment is the ministerial act of recording a taxpayer's Federal tax liability in the office of the District Director."  Additionally, in Phillips v. Commissioner, 106 T.C. 176, 179-180

---

⁹Sec. 6303(a) provides in part:

Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof.  *   *   *

(1996), we stated that the "assessment of additional taxes shown on an amended return is routine IRS procedure.  * * *  To ascribe to this essentially ministerial act the same binding effect as a considered judgment would make little sense as a practical matter."

2.  The Parties' Contentions

In arguing that respondent's position was not substantially justified, petitioner contends that respondent did not have a reasonable basis in fact and law for the position that there were no delays in the performance of ministerial acts.  In particular, petitioner alleges that respondent delayed in performing the ministerial acts of assessing petitioner's 1983 tax liability and issuing notice and demand for payment.  According to petitioner, the terms of the settlement agreements clearly included the taxable year 1983 and disallowed petitioner's deductions of partnership losses in excess of payments he had made to or on behalf of the partnership.  Once petitioner and respondent entered into the settlement agreements, petitioner argues: "all that remained was for Respondent to enforce the agreement according to its terms, a ministerial act requiring no discretion."

In contrast, respondent disputes that there was a delay in assessment that would reasonably warrant an abatement of interest.  According to respondent, the amount of time that

elapsed before respondent made an assessment was attributable to the partnership litigation, and petitioner's 1983 tax liability was assessed within 1 year of the partnership litigation's conclusion pursuant to section 6229(d). Citing <u>Beagles v. Commissioner</u>, T.C. Memo. 2003-67, respondent further contends that (1) the mere passage of time during the litigation phase of a tax dispute does not establish a delay in performing a ministerial act, and (2) decisions on how to proceed during the litigation phase require the exercise of judgment and are not ministerial acts.

3. <u>Reasonableness of Respondent's Position</u>

Although we agree with respondent that decisions on how to proceed during litigation are not ministerial acts, see <u>id.</u>, petitioner's taxable year 1983 was not involved in the partnership litigation. To the contrary, in 1985, petitioner signed settlement agreements, the terms of which settled all taxable years after 1982 with respect to Boulder. The settlement agreements constituted binding agreements between petitioner and respondent. See sec. 6224(c)(1). The legal effect of the settlement agreements was that the partnership items converted to nonpartnership items, and respondent had 1 year in which to assess any income tax liabilities for taxable years included under the settlement agreements' terms. See secs. 6229(f), 6231(b)(1)(C). Respondent, however, did not assess petitioner's

1983 tax liability until the partnership litigation concluded in 1999, even though the settlement agreements were not based on the outcome of the partnership litigation.

Under the circumstances, respondent's position that there were no delays in the performance of a ministerial act lacked a reasonable basis in both fact and law. Considering the explicitness of the settlement agreements and the absence of petitioner's taxable year 1983 from the partnership litigation, there is no reasonable explanation for respondent's delay in performing the ministerial act of assessment. If Appeals Officer Sivick had consulted the Internal Revenue Manual, the section pertaining to "Agreement Forms" for the settlement of tax shelter cases would have informed him of the following:

> Closing agreements should be avoided in settlements
> when subsequent years are TEFRA. On the date they are
> executed by the Service these agreements convert
> partnership items to nonpartnership items for the
> future years involved, triggering a one year assessment
> period under I.R.C. Section 6229(f) for those years.

See 4 Administration, Internal Revenue Manual (CCH), sec. 8.3.1.2.4, at 27,134 (Apr. 13, 1998). Furthermore, the record contains no evidence that any significant aspect of the delay was attributable to petitioner. See S. Rept. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208.

The record also indicates that petitioner appropriately provided all relevant information under his control and all relevant legal arguments supporting his position. See sec.

301.7430-5(c)(1), Proced. & Admin. Regs.  In the July 31 letter, approximately a year and a half before respondent filed the answer, petitioner alerted respondent to the possibility of an error or delay in the assessment of his 1983 tax liability. Petitioner argued that he had settled the taxable year 1983, and petitioner enclosed copies of the settlement agreements. Respondent does not dispute receiving the July 31 letter or copies of the settlement agreements.  Instead of considering the effect of the settlement agreements on petitioner's 1983 tax liability and consulting the Internal Revenue Manual, respondent brushed off petitioner's settlement argument as petitioner's irrelevant "belief".

At the time of the exchange with respondent regarding the July 31 letter, petitioner was not represented by counsel, and the record contains no evidence that petitioner had any legal expertise.  Nevertheless, petitioner provided respondent with the factual information respondent needed to verify that respondent delayed assessing petitioner's 1983 interest liability. Petitioner was entitled to expect that respondent would give due consideration to petitioner's claims.[10]

4.  Conclusion

Respondent has not established that the position in the

----

[10]In a letter dated June 18, 2001, Appeals Officer Sivick provided to petitioner a "Review of the Law and related material".  The review contained references to secs. 6224(c) and 6229(a) and (b) but did not mention secs. 6229(f) or 6231(b).

answer was substantially justified. Consequently, we conclude that petitioner is the prevailing party.

B. Exhaustion of Administrative Remedies

Section 7430(b)(1) provides in part: "A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service." In general, in order to exhaust administrative remedies, the taxpayer or the taxpayer's qualified representative must participate in an Appeals Office conference. Sec. 301.7430-1(b)(1)(i), Proced. & Admin. Regs. "Participation" in an Appeals Office conference is defined as "[disclosure] to the Appeals office [of] all relevant information regarding the party's tax matter to the extent such information and its relevance were known or should have been known to the party or qualified representative at the time of such conference." Sec. 301.7430-1(b)(2), Proced. & Admin. Regs.

The documents in the record indicate that the parties conducted petitioner's conference through oral and written correspondence and that the conference began in July 2001 and ended on October 17, 2001. During this period, in the July 31 letter, petitioner argued that he had settled the taxable year 1983, and petitioner attached copies of the settlement

agreements.  In responding to petitioner's argument, Appeals Officer Sivick did not address the content of the settlement agreements or their possible effect on petitioner's 1983 taxable year.  Indeed, the substance of Appeals Officer Sivick's response suggests that he was unaware of the settlement agreements' relevance to petitioner's tax matter.

Overall, petitioner made a reasonable and good-faith effort to disclose to Appeals Officer Sivick all relevant information in the context and development of the case at the time of the conference.  See Allen v. Commissioner, T.C. Memo. 2002-302. Accordingly, we conclude that petitioner exhausted the administrative remedies available to him.

C.  Reasonableness of Costs Claimed

Section 7430(c)(1) defines reasonable litigation costs to include, among other things, reasonable court costs and reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding (attorney's fees). Attorney's fees are limited by statute and adjusted for cost of living.  Sec. 7430(c)(1)(B)(iii) (and flush language).  For purposes of this motion, the statutory rate for attorney's fees is $150 per hour.  See Rev. Proc. 2002-70, 2002-2 C.B. 845, 850. A taxpayer may recover attorney's fees in excess of the statutory limit in the presence of one or more of the following special factors:  (1) Limited availability of qualified attorneys for the

proceeding, (2) difficulty of the issues presented in the case, or (3) local availability of tax expertise.  Sec. 7430(c)(1)(B)(iii).

Respondent contends that the costs petitioner claims are unreasonable, because the $250 per hour fee arrangement between petitioner and Mr. Benda exceeds the statutory limit, and petitioner has not shown that any of the three special factors applies.  On the other hand, petitioner asserts that this case involves an uncommon and difficult issue, which entitles him to the full amount of attorney's fees incurred in connection with the court proceeding.[11]

We disagree with petitioner that he is entitled to enhanced attorney's fees.  Petitioner has not established that the issue in this case is of sufficient difficulty to qualify as a special factor under section 7430(c)(1)(B)(iii).  We award petitioner reasonable litigation costs in the amount of $1,631.32.

We have considered the remaining arguments of both parties for results contrary to those expressed herein, and, to the extent not discussed above, we find those arguments to be irrelevant, moot, or without merit.

---

[11]Although petitioner established that Mr. Benda was qualified to act as petitioner's attorney in this proceeding, petitioner submitted no evidence with respect to the availability of qualified attorneys or the local availability of tax expertise.

To reflect the foregoing,

                              <u>An appropriate order and</u>

<u>decision will be entered.</u>