T.C. Summary Opinion 2008-79


UNITED STATES TAX COURT


SELECT STEEL INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12881-06S.                Filed July 7, 2008.


Craig Appleby (an officer), for petitioner.

<u>Karen Nicholson Sommers</u>, for respondent.


COHEN, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and
this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, all section references are to

the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioner was not entitled to an abatement of interest on its Federal income tax liability for its taxable year ended February 28, 1994 (1994 fiscal year), and upheld respondent's notice of lien filing related to petitioner's liability for the unpaid interest. After concessions the sole issue for decision is whether respondent's decision not to abate interest with respect to petitioner's income tax liability for the 1994 fiscal year was an abuse of discretion.

## Background

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner is a corporation organized under the laws of and with its principal place of business in the State of California.

Petitioner is engaged in business as a steel contracting firm. Petitioner timely filed its Federal income tax return for the 1994 fiscal year and calculated its tax liability for that year using the cash method of accounting. In April 1996 the Internal Revenue Service (IRS) initiated an examination of petitioner's Federal income tax return for the 1994 fiscal year. The principal issue during the examination was whether petitioner was required to convert to the accrual method of accounting. Between February 1997 and August 1999 petitioner and the IRS

executed four agreements that collectively extended the period of limitations on assessment of tax approximately 3 years.

Computational errors by the examining agent were common throughout the examination of petitioner's return, and such errors resulted in multiple recalculations that were the primary cause of the lengthiness of the examination process. On August 25, 1997, petitioner's accountant sent a letter to the tax examiner acknowledging his receipt of her audit report and addressing several computational errors in the report. Although petitioner fundamentally disagreed with the IRS regarding the necessity that it convert to the accrual method of accounting, petitioner relented on this issue at least by August 25, 1997. However, the examiner did not close the examination of petitioner's 1994 fiscal year until the end of September 1999.

On September 28 and 29, 1999, the examiner sent letters to both petitioner and its accountant summarizing the conclusion of petitioner's examination, which resulted in petitioner's changing its method of accounting. The examiner acknowledged in the letters that the examination was lengthy and that the IRS assigned to petitioner's examination four different audit managers, each of whom gave petitioner different advice and information at different times in the audit process. The examiner explained in the letter to petitioner that the fourth and final IRS audit manager notified petitioner in June 1999 that

it could not choose the year it changed methods of accounting, although petitioner had been told otherwise by an earlier audit manager. She also summarized that the primary result of the examination was to convert petitioner from the cash method of accounting to the accrual method. However, the examiner did not explain fully in the letters why petitioner's examination was not completed for 3-1/2 years.

Upon receipt of a final determination regarding the interest applicable to the liability for its 1994 fiscal year, petitioner submitted on October 15, 2003, a Form 656, Offer in Compromise (OIC), to the IRS explaining its challenge to the interest assessed and including a $2,500 check in an attempt to settle its dispute with the IRS. The IRS cashed the check on October 20, 2003, and applied $2,500 to petitioner's account as an "overpaid credit". However, the IRS did not respond to petitioner until approximately 8 months later on June 15, 2004, when petitioner was notified that only the first page of the 30-page OIC was received. The IRS directed petitioner to the appropriate form for requesting only abatement of interest, Form 843, Claim for Refund and Request for Abatement. Petitioner promptly completed Form 843, attached the documents it had submitted with Form 656, and submitted the request for abatement on July 12, 2004. On October 7, 2004, approximately 1 year after the original document

was submitted, the IRS notified petitioner that it had found the original 30-page OIC.

On February 23, 2005, respondent mailed to petitioner a notice of lien notifying petitioner of the collection action taken with regard to the unpaid tax liability for interest related to the 1994 fiscal year. On March 28, 2005, in response to the notice of lien, petitioner mailed to the IRS Form 12153, Request for a Collection Due Process Hearing. On June 27, 2005, the IRS mailed a letter to petitioner denying its request for abatement of interest.

Petitioner's request for a collection due process hearing and its request for abatement of interest were assigned to different Appeals officers at the IRS, who coordinated with each other in their review of petitioner's requests. The Appeals officers considered almost exclusively the letters and documents petitioner submitted when requesting abatement of interest and challenging the tax lien because the IRS could not find its own case file regarding petitioner's examination. The Appeals officer reviewing petitioner's request for abatement of interest denied the request in full because she found that petitioner did not raise "qualifying ministerial arguments" in its request.

Petitioner's letter requesting abatement of interest stated in part:

> I am pleading for you to carefully review all the facts regarding this audit, for the tax period ending

2/28/1994, not 2004, as indicated in your letter. The amount of the claim was not $2,500.00 as stated in your letter, but for all interest on this tax amount except for the $2,500.00 which I sent to the IRS in good faith with an Offer in Compromise. The Offer in Compromise was prepared and sent at the suggestion of the Laguna Nigel [sic] IRS Office, only to be rejected because I was later informed that an Offer in Compromise could not apply to interest, only taxes.

<u>During the three and one half years it took for the IRS to complete the audit there were ministerial acts involved which consisted of completed audit forms given to our accountant which contained calculation errors, and where in carelessness, the auditor omitted deductions, which resulted in Select Steel paying our accountant to correct these, with months and months of delays accumulating during this time</u>. The entire audit was a sad comedy of errors, and we relied on the advice of our auditor that due to the numerous IRS delays during the audit, that the interest would be waived.

I am requesting an appeal based on such. <u>I am again enclosing copies of paperwork I have sent in the past with this letter</u>. <u>Your files should show the delays which took place in this audit which resulted in the excessive interest charges</u>. <u>There should be copies of the incorrectly calculated audit forms prepared by the IRS in your files along with the final form</u>. Please remember that Select Steel paid the taxes in full promptly, and the taxes were due to a new ruling that businesses such as ours should be on an accrual basis instead of cash basis. There were no penalties assessed, just the exorbitant interest for the three and one half years that it took for the IRS to complete the audit.

<u>Please call me if you have any questions. I sincerely hope that you can locate all the past audit records and that the ministerial acts will become apparent to you. We have acted in good faith throughout this process, and have been spent [sic] countless hours trying to resolve this, in spite of errors and incorrect information supplied by the IRS</u>. [Emphasis added.]

The documents attached to petitioner's letter included the September 1999 letters from the examiner and petitioner's October 2003 OIC attempting to settle the interest charge for $2,500.

In the March 19, 2005, letter disallowing in full petitioner's request for abatement of interest, the IRS provided petitioner with the following cursory denial:

> This letter is your legal notice that your claim is fully disallowed for the following reason:
>
> There was no error or unreasonable delay relating to the performance of a ministerial act by an employee or officer of the Internal Revenue Service.

In the final determination letter denying the request for abatement of interest, dated June 1, 2006, petitioner received another cursory denial of its request for abatement of interest:

> The delays cited in your claim are attributable to the exercise of judgment or to managerial acts, not to ministerial acts qualifying for abatement under IRC Sec. 6404(e)(1) as applicable for the tax period at issue.

Also on June 1, 2006, the IRS mailed a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, holding that the tax lien filed was an appropriate collection action. Petitioner responded by filing the petition.

### Discussion

If, as part of a section 6330 proceeding, a taxpayer makes a request for abatement of interest, the Court has jurisdiction over the request for abatement of interest that is the subject of

the Commissioner's collection activities.  Katz v. Commissioner, 115 T.C. 329, 340-341 (2000).  Under section 6404(e)(1), as in effect for petitioner's 1994 fiscal year, the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of income taxes to the extent that the deficiency in payment is attributable in whole or in part to any error or delay by an officer or employee of the IRS in performing a ministerial act.  Although Congress amended section 6404(e)(1) in 1996 to permit the Commissioner to abate interest with respect to "unreasonable" error or delay resulting from "managerial" or ministerial acts, the amendment applies only to interest accruing with respect to deficiencies for taxable years beginning after July 30, 1996, and is inapplicable to the instant case.  See Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1457 (1996).

The term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place.  Corson v. Commissioner, 123 T.C. 202, 207 (2004).  A decision concerning the proper application of Federal tax law is not a ministerial act.  Id.  An error or delay in performing a ministerial act is taken into account only if it is in no significant aspect attributable to the taxpayer and only

if it occurs after the IRS has contacted the taxpayer in writing with respect to the deficiency or payment.  Sec. 6404(e)(1). Section 6404(e) is intended to apply only "in instances where failure to abate interest would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844.

Section 6404(h)(1) authorizes the Court to decide whether the Commissioner's failure to abate interest was an abuse of discretion and, if so, to order an abatement.  See Jones v. Commissioner, T.C. Memo. 2008-56.  Generally, the taxpayer must prove that the Commissioner's discretion was exercised arbitrarily, capriciously, or without sound basis in fact or law. Lee v. Commissioner, 113 T.C. 145, 149 (1999); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  However, "The Commissioner is in the best position to know what actions were taken by IRS officers and employees during the period for which petitioners' abatement request was made and during any subsequent inquiry based upon that request."  Jacobs v. Commissioner, T.C. Memo. 2000-123.

Petitioner argues that the delay in full payment of its Federal tax liability for 1994 is attributable not to its own actions in any way but rather to substantial delays during the IRS audit.  Petitioner was able to present a few documents at trial indicating both ministerial and managerial errors and

delays on the part of the IRS, as well as disagreement between the parties regarding the proper application of Federal tax law. Petitioner also maintained at trial that it would not have consented to the extensions of the period of limitations if it had known that interest during the extension periods would continue to accrue on any deficiency in tax ultimately assessed. (Petitioner's officers assert that they were assured by an examiner that interest would be waived, but they did not provide specific details or corroboration of this claim.)

Respondent contends that on the basis of the "available evidence", petitioner's request for abatement of interest was properly disallowed because petitioner failed to show error or delay by IRS employees in performing a ministerial act. However, the available evidence is scant primarily because of respondent's destruction or loss of petitioner's case file. The few documents in evidence have been supplied by petitioner, whose access to the information and documents most pertinent to resolution of this case is severely limited. There are no documents explaining what was happening from August 25, 1997, until the end of September 1999 when the examiner sent the letters to petitioner and its accountant at the close of the examination. Respondent argues on brief that petitioner's agreements to extend the period of limitations demonstrate that the delays in the examination process were not solely attributable to respondent. We disagree.

Even where a taxpayer agrees to extend the period of limitations, there may be instances where actions or inactions of IRS employees may result in ministerial errors or delays.  See Jacobs v. Commissioner, supra.  Where neither the taxpayer nor the Court is given a rational explanation for the Commissioner's discretionary decision, we may find an abuse of discretion.  See Dadian v. Commissioner, T.C. Memo. 2004-121; Jacobs v. Commissioner, supra.  Petitioner's claims in its letter requesting abatement of interest that extensive ministerial errors and delays occurred during its examination, including calculation errors and omissions in the audit reports prepared by the examiner, were neither addressed nor denied during the Appeals process or at trial.  Such errors and delays are ministerial because they do not involve the exercise of judgment or discretion, the supervisors' reviews had already taken place (apparently several times), and computational errors do not involve the application of Federal tax law.  See Jones v. Commissioner, supra.  Furthermore, the Appeals Office knew from petitioner's letter requesting abatement of interest that petitioner was reasonably relying on the Appeals officer to review the IRS case file for specific examples of the calculation errors and related ministerial delays alleged.  The Appeals officer did not, however, inform petitioner that its case file was missing until after petitioner had petitioned the Court

challenging the determinations.  Although petitioner received categorical denials that any ministerial errors or delays had occurred contributing to the accrual of interest on its account, petitioner was not aware until shortly before trial that respondent was not able to find its case file.  At the time petitioner submitted the documents accompanying its letter requesting abatement of interest, petitioner directed attention to the evidence of ministerial errors and delays in its case file and reasonably believed that the IRS would consult the case file in reviewing petitioner's request.

Because respondent has offered no explanation of the denial of petitioner's claims for abatement of interest due to ministerial calculation errors, we hold that it was an abuse of discretion for respondent to disallow in full petitioner's request for abatement of interest.  See Dadian v. Commissioner, supra; see also Jacobs v. Commissioner, supra.

For the period from the beginning of petitioner's examination until August 25, 1997, the first date in the record when petitioner's accountant notified the IRS of several calculation errors in the examiner's audit report, petitioner's request for abatement of interest was properly denied.  Until August 25, 1997, petitioner and the examiner were engaged in disagreements regarding the proper application of Federal tax law, specifically whether petitioner was required to convert to

the accrual method of accounting.  As of at least August 25, 1997, however, petitioner had conceded the substantive tax law challenge.  Because respondent has failed to produce petitioner's case file, the record is void of any documentation of events that occurred between August 25, 1997, and September 28, 1999, when the examiner acknowledged that the fourth and final IRS audit manager had notified petitioner in June 1999 that it could not pick the year that it changed methods of accounting, as petitioner had been advised by a previous audit manager.  This change was due to a prior incorrect statement of Federal tax law by the previous audit manager, and thus the delay following this notification was not due to a ministerial error.  Therefore, for the period between July 1 and September 28, 1999, the denial of petitioner's request for abatement of interest was appropriate.

For the remaining period from August 25, 1997, through the end of June 1999, we hold that respondent's denial of abatement of interest was an abuse of discretion.  Following petitioner's notification to the examiner of calculation errors in the audit report, the examination continued for approximately 2 additional years.  During that time all prerequisites to the act of recalculating petitioner's tax liability had occurred.  See Corson v. Commissioner, 123 T.C. at 207.  Respondent has presented no explanation or evidence regarding what occurred during this lengthy period.  Petitioner alleged multiple

calculation errors throughout the audit process that respondent has failed to address. Such errors are ministerial because they do not involve managerial discretion and do not involve opinions regarding the proper application of Federal tax law.

The record does not show that any significant portion of the delay during this period was attributable to petitioner, who has demonstrated timeliness in its communications with the IRS and who paid the tax deficiency found by the examiner immediately upon the conclusion of the examination. Respondent is in the best position to know what actions IRS officers and employees took during the period for which petitioners' abatement request was made, yet respondent has provided no such information to petitioner or to the Court. See Jacobs v. Commissioner, supra. Because respondent has failed to address petitioner's claims of delays due to computational ministerial errors adequately and because the Appeals office did not base the decision to deny petitioner's request for abatement of interest upon a full review of petitioner's case, we hold that respondent's denial for the period for which there is no documentation or information regarding how the examination was conducted was arbitrary, without sound basis in fact or law, and an abuse of discretion. See Lee v. Commissioner, 113 T.C. at 149; Woodral v. Commissioner, 112 T.C. at 23. Petitioner's situation is one "where failure to abate interest would be widely perceived as

grossly unfair."  See H. Rept. 426, <u>supra</u> at 844, 1986-3 C.B. (Vol. 2) at 844.

We conclude that the determination to uphold the filing of the tax lien as an appropriate collection action was an abuse of discretion.  Petitioner has promptly paid all undisputed amounts and has proceeded diligently to resolve disputes.  There is no basis for concluding that the lien is necessary to protect the Government's interest.  In reaching our decision, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are irrelevant, moot, or without merit.

<u>Decision will be entered</u>

<u>under Rule 155</u>.