T.C. Memo. 2007-6


UNITED STATES TAX COURT


GILBERT VASQUEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16121-03.                    Filed January 10, 2007.


        P claimed earned income credit (EIC) as a refund
of $2,890 on his 2002 tax return.  On May 16, 2003, R
sent a packet of materials to P, proposing to disallow
the EIC, stating that the claimed refund was "frozen",
requiring P to "Return Form 4549 and your payment of
$0.00 in the enclosed envelope by 06/15/2003",
requesting P to provide documents supporting his
claimed EIC, and warning P that a notice of deficiency
would be sent to him if the documents were not received
by June 15, 2003.  P failed to respond, and, on July
18, 2003, R sent the notice of deficiency of $2,890 on
which this case is based.  P secured counsel and filed
a petition.  R filed an answer embodying the position R
took in the notice of deficiency.  Six weeks after the
answer R notified P that P's case was in R's Appeals
Office.  Three months after the notification (4-1/2
months after the answer) P filed a motion in limine for
an order ruling certain documents are not inadmissible
hearsay.  Based on those documents, R eventually
conceded the EIC, and eventually the parties submitted

a proposed decision that P had an overpayment of $2,890.  We entered the decision.  P then moved for litigation costs of $19,100 ($27,000 at "market rate"); on opening legal memorandum, P contends that awardable costs on this $2,890 case have risen to $45,225 ($75,000 at "market rate").  We vacated the entry of decision and filed the litigation costs motion.

    Held:  P's motion for litigation costs denied; R established that R's position in this case was substantially justified.  Sec. 7430(c)(4)(B)(i), I.R.C. 1986.  Other contentions evaluated.

Jeffrey D. Moffatt, for petitioner.

Lorraine Y. Wu, for respondent.

MEMORANDUM OPINION

CHABOT, Judge:  This matter is before us on petitioner's motion for an award of reasonable litigation costs pursuant to section 7430[1] and Rule 231.[2]

Respondent determined a deficiency in individual income tax against petitioner in the amount of $2,890 for 2002.  The determined deficiency arose from petitioner's claim of a refundable earned income credit in that amount under section 32.

---

[1] Unless indicated otherwise, all references to secs. 7430 and 7453 are to those sections of the Internal Revenue Code of 1986 as in effect for proceedings commenced at the time the petition in the instant case was filed; all other section references are to sections of the Internal Revenue Code of 1986 as in effect for 2002, the year in issue.

[2] Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties settled the disputed deficiency by stipulating that there is an overpayment of $2,890 for 2002.

Petitioner asks us to award reasonable litigation costs[3] of $45,225 (based on statutory rates for legal fees) or $75,000 (based on "market rate" for legal fees).[4]

The issues for decision are:

(1) Whether petitioner is entitled to an award of reasonable litigation costs; and

(2) if the answer to the first issue is "yes", then what is the amount of the awardable costs.

Neither petitioner's motion for award of litigation costs nor respondent's response to the motion requested a hearing on the motion. Rules 231(b)(8) and 232(b) (final flush language). In his memoranda of law petitioner states that he has been handicapped by the Court's indication that it would not authorize depositions of certain of respondent's employees. We have

---

[3] Petitioner has requested only litigation costs in the instant case, so we do not consider the statutory or regulatory provisions that apply only to administrative costs.

[4] These amounts are stated in petitioner's opening legal memorandum on the litigation costs motion. Petitioner's answering legal memorandum on this motion asserts that, "H. Preparing this Brief has taken another 30 hours of time, which Petitioner's counsel requests to be compensated for." Petitioner's motion for litigation costs, received 16 days after the Court had entered the parties' stipulated decision, included an estimate that litigation costs up to that point would amount to $19,100 (based on statutory rates for legal fees) or $27,000 (based on "market rate" for legal fees).

examined the parties' stipulations and memoranda of law, as well as petitioner's supplement to the motion and the documents attached thereto, and conclude that the litigation costs motion may properly be resolved with neither (1) an evidentiary hearing nor (2) the authorization of contested depositions.  See Rules 232(a)(2) (last sentence), 75(b) (first sentence).

The parties have presented admissibility disputes in certain of their stipulations.  We rule on these evidentiary disputes infra, as the first items under Discussion.

### Background

When the petition was filed in the instant case, petitioner resided in Lancaster, California.

On his 2002 income tax return (Form 1040A, U.S. Individual Income Tax Return),[5] petitioner showed his filing status as single, and claimed five dependents--VV, SV, AH, EH, and JH.[6] Petitioner reported wage compensation income of $7,200 and adjusted gross income of $7,200.  He claimed the standard deduction of $4,700, a personal exemptions deduction of $18,000, and an earned income credit of $2,890.  He did not show a section 1 tax liability; he claimed the entire $2,890 as an overpayment and asked that all of it be refunded by direct deposit into an

---

[5] Neither the stipulated copy of petitioner's electronically filed 2002 tax return nor the stipulation indicates when the tax return was filed.  We assume the tax return was filed timely.

[6] We refer to the minor children by their initials only.

indicated checking account. To his Form 1040A, petitioner attached a Form 8862 (Information To Claim Earned Income Credit After Disallowance) and a Schedule EIC (Earned Income Credit Qualifying Child Information) with appropriate information as to VV and SV.

On his tax return, including the Form 8862 and the Schedule EIC, petitioner stated (1) that VV and SV were his sons, (2) that VV was born in 1998, and that SV was born in 1997, and (3) that VV and SV each lived with petitioner in the United States for 12 months.

On May 16, 2003, respondent sent to petitioner a two-page letter (Letter 566 B-EZ (SC)), to which was attached the following: A two-page document relating to the earned income credit (Form 886-H-EIC), a one-page document relating to support documents for dependency exemptions (Form 886-H-DEP), a two-page document relating to income tax examination changes (Form 4549), and a one-page document relating to explanation items (Form 886-A).[7] This letter and the attached documents are hereinafter sometimes collectively described as the May 16, 2003, letter.

The May 16, 2003, letter informed petitioner that respondent was examining petitioner's 2002 income tax return and proposed to

---

[7] The letter also showed that a copy of Publication 3498, The Examination Process, was enclosed, but the stipulated exhibit does not include the Publication 3498.

disallow "Exemption(s) Earned Income Credit"; it instructed petitioner as follows:

> If you agree with all the changes listed on the enclosed Form 4549:
>
> - Please sign and date Form 4549, and
>
> - Return Form 4549 and your payment of $      0.00 in the enclosed envelope by 06/15/2003.  Make your check or money order payable to *United States Treasury*.  We may charge interest for payments received after 06/15/2003.  If you can't pay the total amount, please return Form 4549 and contact us at 800-477-1291 to discuss payment arrangements.

The May 16, 2003, letter then instructed petitioner as follows:

> If You Do Not Agree
>
> If you do not agree with all the changes listed on Form 4549, please send us the following information by 06/15/2003
>
> - A letter telling us what item(s) you disagree with and why, and
>
> - Clear photocopies of the records, information, and/or supporting documents, listed on the enclosed Form(s) 886H-DEP, 886H-EIC       to support the items listed above.  It is not necessary to include more than one copy of any document.
>
> If You Do Not Reply
>
> If we do not receive your supporting documents by 06/15/2003, we will send you a Notice of Deficiency. This is a legal document explaining the proposed changes and the amount of the proposed tax increase.
>
> **Important Notes If You Do Not Agree**
>
> It's important that we receive your written response by 06/15/2003.

- Please read the enclosed Form(s) 886H-DEP, 886H-EIC      , which lists the types of documents needed to support your claim and includes helpful information on the Earned Income Credit, Dependency Exemptions, and Head of Household Filing Status.

- To speed up your service, please use the enclosed envelope or address your reply to:

> Internal Revenue Service
> FIELD COMPLIANCE SERVICES
> FRESNO, CA 93888-2222

- Include a copy of this letter with your response.

- Include a telephone number with the area code and the best time for us to call you in case we need more information.

Telephone Number: (    )        Best time to call: _____

**G** Home    **G** Work    **G** Cell Phone

After we review what you've sent us, we will contact you with the results.  If you still disagree with our findings, you have the right to file an administrative appeal as explained in the enclosed Publication 3498, *The Examination Process.*

## Questions

If you have any questions about this letter, please call 800-477-1291 for assistance.  You can also visit our web site at www.irs.gov for additional information.

The enclosed Form 886-H-EIC (Supporting Documents for Taxpayers Claiming EIC on the Basis of a Qualifying Child(ren)) instructed as follows, as relevant to petitioner's claim:

(1) If the qualifying children are the taxpayer's sons or daughters, then the taxpayer is not required to document the relationship;

(2) If the qualifying children are less than 19 years old, then the taxpayer is not required to document the age; and

(3) The following must be sent to support the residency test:

> **To show that the child lived with you for more than half of 2002 send:**
>
> **One of the following:** school records, medical records, daycare records, or Social Services records that show names, common address and dates
>
> **or**
>
> **One letter on official letterhead** from: the school, your medical provider, your clergy or other similar organizations that show names, common address and dates
>
> **\*\*** If you send a letter from a relative who provides your daycare, you MUST send at least one additional letter from the list above.
>
> **\*\* You can send more than one document to show** that the child lived with you for more than half the year

The enclosed Form 886-H-DEP (Supporting Documents for Dependency Exemptions) instructed petitioner to provide information as to the claimed dependents' support.

The enclosed Form 4549 (Income Tax Examination Changes) showed that respondent proposed to disallow all five of the claimed dependency exemptions, as well as the earned income credit, as a result of which there would be neither a balance due nor an overpayment of petitioner's income tax.

The enclosed Form 886-A (Explanation of Items) stated that the claimed refund was "Frozen".

Petitioner failed to respond to the May 16, 2003, letter.

On July 18, 2003, respondent issued the notice of deficiency on which the instant case is based.  The notice of deficiency explanations are as follows:

    Earned Income Credit
      Per Return:  $2890.00
      Per Exam:  $0.00
      Per Adjustment:  ($2,890.00)

    Since you did not establish that you were entitled to
    the earned income credit, we disallowed it.

    Exemptions
      Per Return:  6
      Per Exam:  1
      Per Adjustment:  5

    Since you did not establish that you are entitled to
    the exemptions(s), it/they is/are being disallowed.

Petitioner first consulted with Jeffrey D. Moffatt (hereinafter sometimes referred to as Moffatt), petitioner's counsel in the instant case, on July 26, 2003.  Petitioner retained Moffatt on July 27, 2003.

On September 22, 2003, Moffatt filed a timely petition on petitioner's behalf.  Paragraph 4 of this petition is as follows:

    4.  The determination of the tax set forth in the
    said notice of deficiency (or liability) is based upon
    the following errors:

A.   Petitioner was improperly denied his requested Earned Income Credit, hereinafter referred to as EIC.[8]

B.   Petitioner provided the requested documentation to the Internal Revenue Service to support his claim of the Earned Income Credit.

C.   Petitioner responded to requests for information within the time deadlines requested by the Internal Revenue Service?

D.   Did Petitioner comply to the amount necessary, and in the time frame necessary to allow a claim for legal fees for this present Litigation?

E.   Has Petitioner proved his position by a preponderance of the evidence, which will then allow for legal fees to be covered by Respondent?
[Reproduced literally.]

The answer was filed on November 20, 2003, by Debra A. Bowe

(hereinafter sometimes referred to as Bowe), Associate Area

Counsel (Small Business/Self-Employed).  Paragraph 4 of this

answer is as follows:

4.  A., B., C., Denies.  D. and E., Alleges these are not assignments of error susceptible to an admission or denial by respondent.

The answer denies "for lack of present information" substantially

all of the petition's fact allegations.

_____

[8] The denial of the claimed dependency exemption deductions does not affect petitioner's income tax liability.  Accordingly, we treat the earned income credit as the only relevant tax issue in the instant case.

- 11 -

On November 19, 2003,[9] respondent's counsel's office sent documents in petitioner's case (copies of the petition and the answer, with a note that the administrative file was available) to the Appeals Office for consideration.[10]

On January 2, 2004, the Appeals Office sent a letter to petitioner[11] (1) advising him that his case had been received for consideration in the Appeals Office, (2) explaining what the Appeals Office does, (3) suggesting that petitioner "Contact the 'Person to Contact' listed above with any questions about the appeals process or how you can prepare for your hearing," and (4) showing Cynthia Ace (hereinafter sometimes referred to as Ace) as the "Person to Contact".

The case was assigned to Ace on January 2, 2004.

---

[9] Respondent's answer was filed on Nov. 20, 2003, when the Court received it. However, respondent had mailed the answer to the Court, and had served it on petitioner, on Nov. 19, 2003, the date of the referral to the Appeals Office. See Rule 21(b)(1). Moffatt's records show that he received the answer on Nov. 19, 2003.

[10] See Rev. Proc. 87-24, 1987-1 C.B. 720, for respondent's procedures, and the division of authority, as to the Appeals Office and respondent's counsel before this Court. See also sec. 7452.

[11] As we have found, Moffatt filed the petition, thereby having entered his appearance for petitioner. Rule 24(a)(2). Respondent's answer included Bowe's certificate of service of the answer on Moffatt. Rule 21(b)(2). The record does not include an explanation of why the Appeals Office notified petitioner directly and apparently did not notify Moffatt.

On January 21, 2004, petitioner brought to Moffatt the January 2, 2004, Appeals Office letter.

On April 5, 2004, petitioner filed a motion in limine for an order "allowing for the following documents to come in as Hearsay exceptions and/or Hearsay Exclusions, and/or do not constitute Hearsay at all."  The documents included birth certificates for VV and SV, and various school and State court documents relating to one or more of the claimed dependents.  See supra note 6. Attached to the motion was Moffatt's certificate of service on Bowe.  See Rule 21(b)(1).  The motion did not include any statement that prior notice had been given to Bowe, or any other of respondent's counsel, nor did the motion state whether respondent objected to the motion.  See Rule 50(a).  On April 6, 2004, the Court calendared the instant case for hearing on petitioner's motion in limine at the Court's May 17, 2004, Los Angeles trial session.

On April 9, 2004, respondent's counsel's office mailed to Ace a copy of petitioner's motion in limine "for consideration of petitioner's documentation."

On April 22, 2004, Moffatt called Ace and asked about the status of the case.  Ace explained to Moffatt that she had not yet looked at the case because the case was not yet scheduled for trial.  Moffatt wanted to know who was respondent's counsel on the case.  Ace called Area Counsel and learned that no attorney

had yet been assigned to the case.  Ace transmitted this information to Moffatt.  Moffatt asked Ace if he could get litigation costs if he settled with the Appeals Office.  Ace told him that she did not think so, but that she would find out.

On May 14, 2004, Ace, having evaluated the materials, concluded that respondent should concede the earned income credit issue.

On May 17, 2004, the case was called at the calendar call for the Court's trial session to deal with petitioner's motion in limine.  Respondent was represented by Nguyen Hoang (hereinafter sometimes referred to as Hoang), and petitioner was represented by Moffatt.  Hoang stated that the purpose of petitioner's motion in limine could best be achieved during the stipulation process, which would follow the appeals process.  Moffatt stated that he had subpoenaed 10 government employees to come to the hearing on the motion, in order to authenticate the documents and support the documents' admissibility.  Moffatt stated that "if the motion is heard, and the witnesses are allowed to testify, I think the case will not need to go further in trial.  I think it will be settled by summary judgment."  The Court directed counsel to meet, discuss the documents, and report back.

About 1-1/2 hours later, the case was recalled.  Hoang agreed to stipulate all the documents in petitioner's motion in limine, as follows:

MS. HOANG:  Your Honor, Dan O'Neill, a paralegal for the Respondent, has looked at the documents.  He has indicated that Respondent will stipulate to all of the documents, so the next step will be that Mr. O'Neill will prepare a draft stipulation of facts, and hopefully, get it out with all due deliberate speed. We're shooting for possibly July 1st, and from then on we will continue the process.

Moffatt presented several additional documents.  After a brief discussion, Hoang agreed to stipulate these documents as well.

The Court then advised and prompted as follows:

THE COURT:  Okay.  So based on that presentation, there should be no difficulty here in the stipulation. Mr. Moffatt, I encourage you, pursuant to the Tax Court rules, to proceed informally now there is counsel in the case, --
MR. MOFFATT:  Yes, sir.
THE COURT:  -- and if you want other matters agreed to or stipulated, to present those documents, have discussion about them rather than file motions with the Court because I don't think you really need them here.
MR. MOFFATT: I wouldn't have thought it was necessary either today, Your Honor.
THE COURT:  Okay.
MR. MOFFATT:  Thank you very much.
THE COURT:  On that basis, Mr. Moffatt, do you want to withdraw your motion?
MR. MOFFATT:  I will do so.
THE COURT:  Okay.  Well, you can do that orally right now.
MR. MOFFATT:  I'll do that orally.
THE COURT:  As soon as you ask for leave to withdraw your motion in limine, the Court will permit the motion to be withdrawn.
MR. MOFFATT:  I ask for leave to withdraw the motion.
THE COURT:  Okay.  Very good.  So it's withdrawn. Thank you.

The transcript of these May 17, 2004, proceedings does not indicate that, 3 days earlier, Ace had recommended that respondent concede the earned income credit issue.

On May 24, 2004, Ace asked respondent's counsel's office to prepare decision documents and stipulation documents to resolve the case.

Also on May 24, 2004, Ace returned Moffatt's telephone call of Friday, May 21. On May 25, 2004, Ace told Moffatt that respondent's paralegal was preparing the decision documents and stipulation documents; at Moffatt's request, Ace said she would provide to Moffatt an estimate of the interest on petitioner's overpayment.

On June 16, 2004, respondent's counsel's office told Ace that "she needed to consider the issue of petitioner's request for attorney's fees before the case could be completely resolved."[12]

On June 21, 2004, Ace concluded that petitioner was not entitled to litigation costs because "The Counsel for the Petitioner does not wish to participate in an Appeals conference.

---

[12] So stipulated. The record does not clarify whether it was intended that there be a linkage between the earned income credit issue and the litigation costs issue. Note that two of the five assignments of error (supra text at note 8) in the petition relate to petitioner's claim for an award of reasonable litigation costs, notwithstanding Rule 233 and the Rules referred to therein. Note also petitioner's statements set forth infra in D. Qualified Offer.

He wants to go directly to Tax Court." On June 22, 2004, Ace recommended that, because Moffatt "will not sign the decision documents unless he is awarded attorney fees", the case be forwarded to respondent's counsel's office for trial preparation.

The Court, having not received any filing from the parties after the May 17, 2004, hearing described supra, on July 9, 2004, calendared the case for trial at the December 13, 2004, session in Los Angeles.

On August 16, 2004, petitioner filed a motion in limine similar to the one filed on April 5, 2004, described supra. On August 19, 2004, the Court conducted a telephone conference with the parties to discuss this motion. The Court's order dated August 23, 2004, states that as a result of the conference, the Court understood respondent intended "to stipulate without reservation to certain documents that are the subject of the motion and that are described in the transcript of a hearing in this case held on May 17, 2004." The Court concluded that the stipulation procedure will better serve petitioner's aims than the motion, and so denied the motion in limine.

On August 27, 2004, Lorraine Y. Wu (hereinafter sometimes referred to as Wu) sent to Moffatt a stipulation of facts. In her cover letter, Wu noted that she would prepare a stipulation of settled issues, which she would shortly send to Moffatt. Moffatt responded on August 30, 2004. Moffatt agreed that the

proposed stipulation of facts "seems to mimic my past Motions In Limine". However, he brought up the following items: (1) He wanted respondent to agree to stipulate without reserved relevance objection (a) Ace's case activity record[13] and (b) a June 21, 2004, response to a FOIA (Freedom of Information Act) request he had made; (2) he wanted to take Ace's deposition; (3) he was "looking at filing a motion to transfer this case to the U.S. Federal Court of Claims, [sic] given that the case is essentially a refund case"; and (4) he wanted to meet with Wu and her supervisor "to discuss these issues at my office, thereby satisfying the Branerton requirements in Branerton Corp. v. Commissioner, 761 [sic] T.C. 691 (1974)."

On September 8, 2004, Wu sent to Moffatt a proposed stipulation of settled issues, agreeing that petitioner is entitled to the claimed earned income credit and that petitioner has made an overpayment of $2,890. On September 9, 2004, Moffatt sent to Wu a signed stipulation of facts. In his cover letter, Moffatt repeated most of the points raised in his August 30, 2004, letter to Wu.

On October 28, 2004, Wu received petitioner's trial memorandum. On November 26, 2004, Wu served respondent's trial memorandum on Moffatt. (The relevant Standing Pretrial Order

---

[13] In connection with the instant motion, the parties have stipulated Ace's case activity record.

required the trial memoranda to be exchanged "not less than 14 days before the first day of the trial session.") On December 13, 2004, at the calendar call the parties reported a basis of settlement; they were ordered to submit decision documents by January 12, 2005. The Court received the decision documents and on January 12, 2005, entered decision for petitioner that there was a $2,890 overpayment for 2002.

Petitioner's litigation costs motion was received after the Court entered the parties' stipulated decision. In the exercise of its discretion, the Court sua sponte vacated the entry of decision so that petitioner's motion could be considered and disposed of in the Court's decision of the instant case (see Rule 232(f)), and directed that petitioner's motion then be filed. See, e.g., Swanson v. Commissioner, 106 T.C. 76, 85 (1996).

———————————

When the answer was filed in the instant case, respondent did not have any documentation supporting petitioner's claimed earned income credit.

Respondent first received such documentation as attachments to petitioner's first motion in limine, about 4-1/2 months after the answer was filed.

Respondent's position in the instant case was substantially justified.

## Discussion

We consider first respondent's objections to receipt of certain exhibits, then the general considerations regarding motions for litigation costs, then whether respondent established that "the position of the United States in the [instant] proceeding was substantially justified", and then several of the other issues that the parties presented.

A. Evidence

1. National Taxpayer Advocate Report

Exhibit 22-P is Publication 2104B, National Taxpayer Advocate 2004 Annual Report to Congress, Volume 2, Earned Income Tax Credit (EITC) Audit Reconsideration Study, dated December 31, 2004. Exhibit 22-P is hereinafter sometimes referred to as the Report. Respondent objects to receipt of the Report on the ground of relevance. Petitioner's position is that this report "covers errors related to Earned Income Tax Credit this documented error rate tends to prove errors occurred in petitioner's case, therefore relevancy is satisfied." (Reproduced literally.) Petitioner cites the Report at numerous points in his legal memoranda to show that "the IRS regularly makes errors as to EIC issues."

Rule 402 of the Federal Rules of Evidence (see sec. 7453) provides the general rule that all relevant evidence is admissible, while evidence which is not relevant is not

admissible.  Rule 401 of the Federal Rules of Evidence[14] provides that evidence is relevant if it has "any tendency" to make "any fact" of consequence more likely or less likely than it would be without the evidence.

In determining whether respondent's position is substantially justified, we come to a conclusion as to whether petitioner provided materials to respondent before November 20, 2003, the date respondent's answer was filed.  The accuracy of respondent's records could affect our conclusion as to the existence of the fact of such providing, especially in light of petitioner's declaration on this point, discussed <u>infra</u> (C. Substantially Justified, 3. What Respondent Knew).  This is clearly a "fact that is of consequence to the determination of the action", within the meaning of rule 401 of the Federal Rules of Evidence.  Under these circumstances (although we disagree with many of petitioner's characterizations of what the Report shows), we conclude that the Report is relevant.

We overrule respondent's relevance objection and receive Exhibit 22-P into evidence.

---

[14] Fed. R. Evid. 401.  Definition of "Relevant Evidence":

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

2.  <u>Senatorial Office Press Release</u>

Exhibit 23-P is a February 27, 2002, press release from the office of Senator Charles E. Schumer of New York, which asserts that in 2001 respondent lost tax returns and other documents from about 71,000 people from "upstate" New York and New England.  The press release states that employees at a Pittsburgh, Pennsylvania, bank "reportedly destroyed or hid thousands of tax documents * * * because they felt they could not meet the IRS' processing deadlines."  Respondent objects on the grounds of hearsay and relevance.  Petitioner's position is:

> the document covers error related to lost documents
> similar in time to the documents petitioner claimed
> were lost by the IRS.  As such, this tends to prove the
> IRS looses [sic] documents on occasion, which satisfies
> the relevancy requirement.

As to the hearsay objection, petitioner directs our attention to all or part of rules 801, 802, 803, 807, 901(b), 902, 1001, and 1005 of the Federal Rules of Evidence.

The statements as to matters of fact asserted in Exhibit 23-P relate to documents lost 2 years before the events we deal with in the instant case, by an office some 2,000 miles from respondent's offices in the instant case, and lost because a private contractor's employees were concerned about deadlines imposed on them by respondent.  The matter dealt with in Exhibit 23-P is so remote from "any fact that is of consequence to the determination of the action" before us that we conclude Exhibit

23-P fails even the broadly permissive test of rule 401 of the Federal Rules of Evidence.  See also Fed. R. Evid. 403.

We sustain respondent's relevance objection to Exhibit 23-P, and so need not deal with respondent's hearsay objection.

B.  In General

The Congress has provided for the awarding of litigation costs to a taxpayer who satisfies a series of requirements.  Sec. 7430.[15]

---

[15] Sec. 7430 provides, in pertinent part, as follows:

SEC. 7430.  AWARDING OF COSTS AND CERTAIN FEES.

(a) In General.--In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for--

    *     *     *     *     *     *     *

    (2) reasonable litigation costs incurred in connection with such court proceeding.

(b) Limitations.--

    (1) Requirement that administrative remedies be exhausted.--A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service. * * *

    *     *     *     *     *     *     *

(c) Definitions.--For purposes of this section--
                                    (continued...)

---

[15](...continued)
        *       *       *       *       *       *       *

        (4) Prevailing party.--

            (A) In general.--The term "prevailing party" means any party in any proceeding to which subsection (a) applies * * *--

                (i) which--

                    (I) has substantially prevailed with respect to the amount in controversy, or

                    (II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

                (ii) which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28, United States Code * * *

            (B) Exception if United States establishes that its position was substantially justified.--

                (i) General rule.--A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified.

        *       *       *       *       *       *       *

            (C) Determination as to prevailing party.-- Any determination under this paragraph as to whether a party is a prevailing party shall be made by agreement of the parties or--

        *       *       *       *       *       *       *

                (ii) in the case where such final determination is made by a court, the court.

        *       *       *       *       *       *       *
                                        (continued...)

In general, the requirements of section 7430 are in the conjunctive; i.e., the taxpayer must satisfy each of them in order to succeed.  See <u>Goettee v. Commissioner</u>, 124 T.C. 286, 289 (2005), affd. without published opinion 192 Fed. Appx. 212 (4th Cir. 2006); <u>Corson v. Commissioner</u>, 123 T.C. 202, 205-206 (2004).

Respondent concedes that petitioner (1) substantially prevailed (sec. 7430(c)(4)(A)(i)) and (2) met the net worth requirements (sec. 7430(c)(4)(A)(ii)).  Respondent contends (1) petitioner should "not be treated as the prevailing party" because respondent's position "was substantially justified" (sec. 7430(c)(4)(B)(i)); (2) petitioner failed to exhaust available administrative remedies (sec. 7430(b)(1)); (3) petitioner

_____

[15](...continued)
        (6) Court proceedings.--The term "court proceeding" means any civil action brought in a court of the United States (including the Tax Court * * *).

        (7) Position of United States.--The term "position of the United States" means--

            (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and

            (B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of--

                (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or

                (ii) the date of the notice of deficiency.

unreasonably protracted proceedings (sec. 7430(b)(3)); and (4)
the amount of costs petitioner claims is not reasonable, and
petitioner neither paid nor incurred the claimed costs (subsecs.
(a)(2) and (c)(1) of sec. 7430).

We consider first whether respondent's position was
substantially justified.

## C. Substantially Justified

To recover costs from respondent, petitioner must establish
he is the "prevailing party" within the meaning of section
7430(c)(4).  Petitioner has satisfied the requirements of section
7430(c)(4)(A) ("substantially prevailed" and net worth).
However, under section 7430(c)(4)(B)(i), petitioner shall not be
treated as having satisfied the prevailing party requirement if
respondent "establishes that the position of the United States in
the proceeding was substantially justified."  Although the
overall burden of proof as to "prevailing party" is on
petitioner, the statute itself places on respondent the burden of
proof on the "substantially justified" element.  See discussion
in Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 79
(2004), affd. 404 F.3d 1291 (11th Cir. 2005).

Respondent contends that (1) petitioner did not respond to
the May 16, 2003, letter; (2) petitioner did not provide any
supporting documentation in response to the notice of deficiency
before respondent's answer was filed; and (3) this Court should

not believe petitioner's declaration that in May 2003 petitioner sent appropriate documentation to respondent.

Accordingly, respondent concludes, when respondent took a position in the proceeding respondent's position was substantially justified based on what respondent knew at that time.

In his opening legal memorandum petitioner states as follows:

B.  The position advanced by the Respondent was substantially unjustified by the facts that five children were dependants of Petitioner. To deny the two EIC Deductions when five children were involved Petitioner believes was both unjustified, and based on red lining the area in which Petitioner lives.

1.  Respondent, Petitioner contends, was on notice of the error when Petitioner called Respondent's service center on more than one occasion.
2.  Respondent, in documents already in front of this Court, indicated a recommendation for qualification of EIC as to Petitioner, as of 11-19-03.
3.  Petitioner also submitted an affidavit claiming documents were supplied to Fresno service center.
4.  Only recently has Petitioner discovered an audit, as to Fresno showing 75% of reviewed cases of disallowed EIC credits had documents in them supporting EIC allowance.  This same report< Exhibit P22, showed Fresno service center as having the highest error rate, with over 54% error rate, compared to other service centers processing EIC.
5.  Petitioner has obtained a document, supplied by Respondent, showing the word Document on it, although mis-spelled, at or near the time Petitioner claims

documents were supplied to the Fresno service center.

6. Petitioner requested depositions to be authorized by this Court to examine the word document, and or the absence of it and the use and recollection of statements made by IRS reps to Petitioner's Counsel. This request was denied. Petitioner instead was forced on relying on Respondent obtaining statements regarding this mis-spelled word in Petitioner's transcript.

7. Not surprisingly Respondent's examination of supposed witnesses produced no smoking gun or even a recollection of comments regarding Petitioner's case, which took place prior to Petitioner discovering the P22 showing error rates that are so staggering, that if those same error rates were done in private industry, and an individual was forced to suffer because of the error rate, civil and criminal charges would have flown from the egregious 54% error rate, and 75% of viewed cases having documentation supporting EIC qualification. [Reproduced literally.]

In his answering legal memorandum petitioner states as follows:

**PETITIONER HAS ALLEGED THE GOVERNMENT'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED.**
All agree that §2412(d)(1)(B) requires a fee applicant to *allege* that the Government's position "was not substantially justified. **Scarborough v. Principi, 541 U.S. 401.** It is not Petitioner's responsibility to prove it was in fact substantially justified, only to allege that Respondent was not substantially justified. In this case, the claim Respondent was not substantially justified has already been made, which is described in the below paragraphs.

Petitioner's Motion for Legal Costs, dated 1-21-06, stated in 1. of the brief, that the dynamics of the Committee report versus the statute. In this recitation, Petitioner covered the magic words of substantially unjustified.

1.    Petitioners have been apprised that RESPONDENT has conceded the case.  And a judgment was issued in favor of Petitioner.  As such Petitioner's have substantially prevailed on the issue.  This satisfies the litigation element of Code Section 7430, and the prevailing element.  Under the Congressional Committee Report on P.L. 100-647, the Committee Reports seem to reflect an intent that one be permitted to recover fees and costs any time the IRS has issued a 30-day letter.  This however differs from Statute, which states that the **"substantially unjustified position"** of the United States must be asserted as of "the date of the receipt by the taxpayer of the notice of the decision of the IRS Appeals Office, or, the date of the notice of deficiency."  IRS Code 7430(c)(7).

In item 2, of Petitioner's Motion for Legal Costs, dated 1-21-06, Petitioner alleged Respondent was substantial unjustified.

2.  "The position advanced by the United States **was substantially unjustified by the facts that 5 children were involved.**  To deny the two Earned Income Deductions when this many children were involved Petitioner believes was both unjustified, and based on red lining the area in which Petitioner lives."  [Reproduced literally.]

We agree with respondent that his position in this litigation was substantially justified.

"Substantially justified" is defined as "justified to a degree that could satisfy a reasonable person" and having a "reasonable basis both in law and fact."  <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (internal quotation marks omitted);[16]

---

[16] Although the dispute in <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988), arose under the provisions of the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412(d), the relevant provisions of this part of the EAJA are almost identical to the language of this part of sec. 7430.  <u>Cozean v. Commissioner</u>, 109 T.C. 227,
(continued...)

Huffman v. Commissioner, 978 F.2d 1139, 1147 n.8 (9th Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo. 1991-144. Respondent's position may be incorrect and yet be substantially justified "if a reasonable person could think it correct". Pierce v. Underwood, 487 U.S. at 566 n.2.

Whether respondent acted reasonably in the instant case ultimately turns on the available information which formed the basis for respondent's position, as well as on the law relevant to the instant case. Coastal Petroleum Refiners v. Commissioner, 94 T.C. 685, 688-690 (1990).

The fact that respondent eventually loses or concedes a case does not by itself establish that respondent's position is unreasonable. Maggie Management Co. v. Commissioner, 108 T.C. 430, 443 (1997). However, it is a factor that may be considered. Idem.

In determining whether respondent's position was substantially justified, the question is whether respondent knew or should have known that the Government's position was invalid

---

16(...continued)
232 n.9 (1997). Accordingly, we consider the holding in Pierce v. Underwood, supra, to be applicable to the case before us.

Also, the "substantially justified" standard is not a departure from the reasonableness standard of pre-1986 law. Huffman v. Commissioner, 978 F.2d 1139, 1147-1148 (9th Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo. 1991-144. Accordingly, we consider the holdings of pre-1986 law on reasonableness to be applicable to the case before us, except as to the question of which party has the burden of proof.

at the time that respondent took the position in the litigation. <u>Coastal Petroleum Refiners v. Commissioner</u>, 94 T.C. at 689.

Ordinarily, we identify the point at which the United States is first considered to have taken a position, determine what that position was, and then decide whether that position, taken from that point forward, was or was not substantially justified. <u>Maggie Management Co. v. Commissioner</u>, 108 T.C. at 442. Ordinarily, the position of the United States in the proceeding in this Court is the position respondent sets forth in the answer. <u>Huffman v. Commissioner</u>, 978 F.2d at 1147-1148; <u>Maggie Management Co. v. Commissioner</u>, 108 T.C. at 442.

1. <u>Summary and Conclusions</u>

For purposes of section 7430, the position of the United States in the proceeding in this Court is the position respondent took in the answer--that is, (1) petitioner was not entitled to the earned income credit; (2) petitioner had not provided the requested documentation to support his claimed earned income credit; and (3) respondent did not have information as to the truth of petitioner's factual assertions as to petitioner's eligibility for the earned income credit.

By the time respondent filed the answer, respondent did not have any documentation supporting petitioner's claimed earned income credit. We do not believe petitioner himself provided such documentation; we do not believe petitioner provided such

documentation through Moffatt until the first motion in limine, about 4-1/2 months after the answer was filed.

We conclude respondent's position was substantially justified at the time the answer was filed, and respondent timely conceded the case after receiving the documentation attached to petitioner's motion in limine. As a result, we conclude respondent's position in the litigation was substantially justified within the meaning of section 7430(c)(4)(B)(i).

We consider first what was the "position of the United States" that respondent has the burden of proving was "substantially justified". Then we consider what respondent knew when respondent took that position. Then we consider whether that position was substantially justified.

2. Respondent's Position

In light of the foregoing, the position of the United States in the instant case is the position respondent took in the answer, filed on November 20, 2003.[17]

In the notice of deficiency, respondent's explanation for the earned income credit disallowance is "Since you did not

_____

[17] Petitioner contends that the position of the United States in the instant case is the position taken in the notice of deficiency. In the instant case, as shown infra, the answer in effect embraced the notice of deficiency. It is not clear to us why petitioner appears to reject the Maggie Management approach. On the record in the instant case, neither our analysis nor our conclusion would be different if we were to adopt petitioner's approach. See Maggie Management Co. v. Commissioner, 108 T.C. 430, 442-443 (1997).

establish that you were entitled to the earned income credit, we disallowed it."

The petition's assignments of error include the following:

B.  Petitioner provided the requested documentation to the Internal Revenue Service to support his claim of the Earned Income Credit.

C.  Petitioner responded to requests for information within the time deadlines requested by the Internal Revenue Service? [Sic]

In the answer, respondent denied these assignments of error; respondent also denied "for lack of present information" petitioner's numerous assertions of fact as to the basis for his claimed earned income credit.

Thus, respondent's position at the time of the answer was: (1) Petitioner was not entitled to the earned income credit; (2) petitioner had not provided the requested documentation to support his claimed earned income credit; and (3) respondent did not have information as to the truth of the petition's factual assertions as to petitioner's eligibility for the earned income credit.

Ultimately, respondent conceded error on the first part of this position; i.e., respondent conceded that petitioner was entitled to the earned income credit, and in the full amount petitioner had claimed on his tax return.  This concession came about after petitioner provided documentation to support his

claim.  We proceed to consider what respondent knew as to the earned income credit issue by November 20, 2003.

     3.  What Respondent Knew

     On May 16, 2003, shortly after petitioner's 2002 tax return was filed (supra note 5), respondent notified petitioner that his tax return was being examined.  The May 16, 2003, letter asked for certain information and documentation.  Petitioner does not contend that respondent already had the information and documentation at the time of the May 16, 2003, letter.

     The parties have stipulated that petitioner failed to respond to the May 16, 2003, letter.  Respondent issued the notice of deficiency on July 18, 2003.  Petitioner first consulted with Moffatt on July 26, 2003, and retained Moffatt on July 27, 2003.  The petition was filed on September 22, 2003.  The answer was filed on November 20, 2003.

     Respondent referred the case to the Appeals Office on November 19, 2003.  Supra note 9.  More than 5 weeks later, the Appeals Office notified petitioner that the office had his case, and suggested petitioner contact Ace.  On January 21, 2004, petitioner brought the Appeals Office letter to Moffatt.  Supra note 11.  On February 10, 2004, Moffatt called someone from respondent.

On April 5, 2004, petitioner filed a motion in limine that included documentation which resulted in Ace's recommending on May 14, 2004, that respondent should concede the earned income credit issue.

We conclude, and we have found, that (1) when the answer was filed respondent did not have any documentation supporting petitioner's claimed earned income credit, and (2) respondent first received such documentation as attachments to petitioner's first motion in limine, about 4-1/2 months after the answer was filed.

In arriving at this conclusion, we have taken into account the stipulated declaration[18] by petitioner "under penalty of perjury under the laws of the State of California", as follows:

> IV.      On or about May 2003, I sent by United
> States mail to the Internal Revenue Service,
> located in Fresno, California, the following
> document at the request of Internal Revenue
> Service:  All five (5) of my children's birth
> certifications; All five (5) of my children's
> school records; Lease Agreement on the
> property that I was renting my fiancée and
> our five (5) children; and utility bills,
> which included:  Electricity, Home Gas bills
> and cable.  [Reproduced literally.]

Firstly, the May 16, 2003, letter was, indeed, a "request of the Internal Revenue Service" for relevant documents, but the parties have stipulated that "3.  Petitioner failed to respond to

---

[18] Although the declaration is marked Exhibit 21-R; the stipulation designates it as Exhibit 21-P.  The 21-R marking is obviously a typographic error that has no effect on our considerations.

the May 16, 2003, letter." The May 16, 2003, letter stated in several places that petitioner should respond by "06/15/2003". The notice of deficiency was issued on July 18, 2003, and petitioner proceeded promptly thereafter to consult and then retain Moffatt to represent him in this matter. Petitioner has not identified any other "request of the Internal Revenue Service" to which he might have been responding "On or about May 2003".

Secondly, in order to believe that petitioner provided the documents to respondent as stated in his declaration, it appears that we also have to believe that petitioner had the documents in late July 2003, when he retained Moffatt and either (a) petitioner did not then give the documents to Moffatt or (b) petitioner did then give the documents to Moffatt but Moffatt chose to "sit on" the documents for many months until early April 2004, when the first motion in limine was filed.[19]

Petitioner's statement in his declaration that he mailed the indicated documents to respondent on or about May 2003 does not ring true. See, e.g., Burrill v. Commissioner, 93 T.C. 643, 662 n.24 (1989).

We have also attempted to take into account petitioner's contention in his opening legal memorandum as follows:

_____

[19] Moffatt's hourly itemization shows that his first contact with respondent (apart from a Freedom of Information Act request) was a relatively brief telephone call "to IRS" on Feb. 10, 2004.

5. Petitioner has obtained a document, supplied by Respondent showing the word Document on it, although mis-spelled, at or near the time Petitioner claims documents were supplied to the Fresno service center.

6. Petitioner requested depositions to be authorized by this Court to examine the word document, and or the absence of it and the use and recollection of statements made by IRS reps to Petitioner's Counsel. This request was denied. Petitioner instead was forced on relying on Respondent obtaining statements regarding this mis-spelled word in Petitioner's transcript. [Reproduced literally.]

We have searched in vain for "a document, supplied by Respondent showing the word Document on it, although mis-spelled". Based on notes of telephone conferences the Court held with counsel for the parties, we surmise that petitioner intends to refer to stipulated Exhibit 3-J, "a transcript of petitioner's 2002 tax account, entitled 'IMF MCC Transcript - Specific'." Based on these notes, we further surmise that the item petitioner intends to refer to is the following:

```
290 07282003  0.00  200329 93254-999-05099-3
                    HC3 ARC-002-071       INTD        PC
                    CORRESPONDDT-      CREDIT DT-
                    REFUND STATUTE CONTROL DT-
                    AMD CLMS DT-       CIS MF IND-O
                    CSED-
```

In his answering legal memorandum petitioner asserts as follows:

Petitioner has submitted documentation indicating he has submitted proof orally as well as in writing. Respondent has claimed that the misspelled word document on Petitioner's file has no basis, to the fact Petitioner submitted documents, while not showing

credibly, through deposed witnesses, how the word could have arrived on Petitioner's file.  Petitioner was denied subpoena power of representatives at the IRS whom had previously conveyed to Petitioner's counsel that this record could only be accomplished by and a direct result of receiving correspondence from Petitioner, as a direct result of Petitioner attempting to satisfy substantiation that he in fact had five children.  [Reproduced literally.]

Firstly, July 28, 2003, the date of the item we understand petitioner to be directing our attention to, is 10 days after respondent issued the notice of deficiency, 2 days after petitioner first consulted Moffatt, and 1 day after petitioner retained Moffatt.  Moffatt did not provide the documents to respondent by July 28, 2003 (supra note 19).  In order to believe that this item shows that, on July 28, 2003, respondent received the documents from petitioner, it appears that we also would have to believe that either (a) petitioner did not tell Moffatt that he had just sent the documents to respondent or (b) petitioner did tell this to Moffatt but Moffatt did not then memorialize this information in a declaration by petitioner[20] but instead let the supposed communication slip until Moffatt noticed the item on the stipulated exhibit that respondent provided to Moffatt later during the course of preparing the stipulations and exhibits in connection with the instant litigation costs motion.

---

[20] As noted, supra, the stipulated declaration by petitioner is that he sent the documents to respondent "On or about May 2003".

Secondly, petitioner asserts that two of respondent's employees "had previously conveyed to Petitioner's counsel that this record [presumably the July 28, 2003, entry] could only be accomplished by and a direct result of receiving correspondence from Petitioner," and that petitioner could have shown this if he had been allowed to depose these employees. The parties have stipulated declarations by these two employees under penalties of perjury, pursuant to 28 U.S.C. section 1746. One employee, Gerald R. Franco, declares that (1) (a) the indicated Document Locator Number and Transaction Code show that "a notice was generated by the Internal Revenue Service to the taxpayer", (b) they do not show that correspondence was received by the Internal Revenue Service from the taxpayer, and (2) he cannot explain the term "CORRESPONDDT-", but he can state that this notation "does not indicate the receipt of correspondence from a taxpayer." The other employee, Barbara M. DeLeo, declares that (1) she is a customer service representative, (2) her records show that she spoke on the telephone with someone about petitioner's case, but that she has no recollection of having had this telephone conversation or of what was said, (3) that she is not familiar with the type of document (the IMF MCC Transcript - Specific) and does not know the meaning of the term "CORRESPONDDT-", and (4)

"My statement [in a teleconference with Moffatt and Wu] that it could indicate correspondence sent in to the Internal Revenue Service was only intended as a possibility."

We noted in a telephone conference with counsel for the parties that (1) neither petitioner nor Moffatt stated that either of them had sent anything to respondent at such a time that respondent would have received it on or about July 28, 2003, (2) in light of the timing (the notice of deficiency and the absence of any notation in Moffatt's hourly itemization showing a communication to respondent around this time) it seemed highly unlikely that respondent received documents from petitioner on July 28, 2003, and (3) deposition of these two employees of respondent would most probably be merely an unproductive fishing expedition adding to an already extraordinary cost of this $2,890 case--a cost of litigating the motion for costs and not of litigating the case. We commented that, if a request for depositions were to be made and opposed, then we would most likely not order the depositions. Presumably in reliance on that expression by the Court, petitioner did not formally institute further discovery by depositions on this point.

We also have taken into account petitioner's contention in his opening legal memorandum:

    1.  Respondent, Petitioner contends, was on
        notice of the error when Petitioner called
        Respondent's service center on more than one
        occasion.

However, petitioner does not enlighten us as to (1) where in the record there is support for the statement that petitioner called respondent's service center, (2) when those calls, or any of them, were made, or even (3) what information or documentation was provided by petitioner to respondent during or as a result of those calls.

From the foregoing, we conclude that by November 20, 2003, when the answer was filed, respondent had no more information than what was on petitioner's tax return and had none of the requested documentation or any other documentation that might have enabled respondent to conclude that petitioner was entitled to the claimed earned income credit.

As best we can tell from the record before us, it was not until petitioner filed the first motion in limine, on April 5, 2004, that respondent received the appropriate documentation.

4.  <u>Substantially Justified</u>

Ordinarily, taxpayers who claim credits are obligated (when challenged) to show that they are entitled to the credits that they claim.  Petitioner failed to respond to respondent's request for documents to show his entitlement to the claimed earned income credit.  Under these circumstances, respondent was justified in taking the position that petitioner was not entitled to this credit.  Cf. <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); Rule 142(a).

On April 5, 2004, petitioner finally provided documentation by the unorthodox (in this Court) device of a motion in limine. Although the road thereafter was bumpy, on September 8, 2004, Wu sent to Moffatt a proposed stipulation of settled issues, agreeing that petitioner is entitled to the claimed earned income credit and that petitioner had made an overpayment of $2,890; in essence, respondent conceded the case.

Respondent's position--that petitioner was not entitled to the claimed earned income credit unless petitioner could show he was so entitled--was substantially justified. When petitioner finally did provide the requested documentation--more than 10 months after respondent first asked for it and more than 4 months after respondent filed the answer in the instant case--respondent conceded the case 5 months later. It is evident that this delay is attributable in significant part to the aggressive postures presented by those who spoke for both parties. Nevertheless, the delay was not unreasonably long. See, e.g., cases collected at Sokol v. Commissioner, 92 T.C. 760, 765 (1989).

We conclude, and we have found, that respondent has successfully carried the burden of establishing that the position of the United States in the instant judicial proceeding was substantially justified.

On answering legal memorandum, petitioner argues as follows:

The burden of establishing that the position of the
United States was substantially justified,

§2412(d)(1)(A) indicates and courts uniformly have recognized, must be shouldered by the government. Respondent has not shown how in light of 75% lost documents in Fresno related to EIC cases, as well as the worst error rate in the country, over 54% wrong EIC assessments, Respondent has at the mere threshold indicated how its position was substantially justified. [Reproduced literally.]

Petitioner's reference is to the Report. (<u>Supra</u> A. <u>Evidence</u>, 1. <u>National Taxpayer Advocate Report</u>.) Apart from our unwillingness to accept petitioner's characterization of what the Report concludes, we hold it is not unreasonable for respondent to maintain respondent's position as to a specific taxpayer, and not concede the case until <u>that</u> taxpayer has presented the documentation to show that <u>that</u> taxpayer is entitled to the credit that <u>that</u> taxpayer has claimed on <u>that</u> taxpayer's tax return. In the instant case, respondent was justified in maintaining the position that petitioner was not entitled to the claimed earned income credit until petitioner provided documentation showing that he was entitled to that credit.

It follows that petitioner, although he "substantially prevailed" (section 7430(c)(4)(A)), is not "the prevailing party" (section 7430(c)(4)(B)), and so petitioner is not entitled to an award of reasonable litigation costs under section 7430(a)(2).

We so hold.

D. <u>Qualified Offer</u>

Notwithstanding the foregoing conclusory statement, a taxpayer may nevertheless be treated as the prevailing party if

the taxpayer satisfies the qualified offer provisions of subsections (c)(4)(E) and (g) of section 7430.

In his motion for an award of reasonable litigation costs petitioner contended as follows:

> 4.  Petitioner's filing of their Petition stating that an EIC was available satisfies the Qualified Offer Requirements if any needed to obtain Litigation Costs. The Petition itself satisfies notice to the Director of the IRS that the Petition was requesting Litigation costs.  The fact that the Appeals office made an internal ruling that Petitioner's deserved the EIC credit, and yet RESPONDENT's counsel failed to follow that position satisfies the point that Petitioners availed themselves of the Appeal process satisfies the Appeal element with respect to requesting Legal fees and Costs.  [Reproduced literally.]

In a telephone conference, petitioner's counsel informally indicated that his contentions as to the qualified offer provisions were in error and that claim was no longer part of the dispute in the instant case.[21]

In his opening legal memorandum, petitioner revisits the issue, stating as follows:

---

[21] Compare, e.g., <u>Johnston v. Commissioner</u>, 122 T.C. 124, 126 (2004), affd. 461 F.3d 1162 (9th Cir. 2006), with <u>Downing v. Commissioner</u> T.C. Memo. 2005-73, Item E, regarding the requirement of sec. 7430(g)(1)(C) that the document he "designated at the time it is made as a qualified offer for purposes of this section".  The petition did not include such a designation.  Also, Rule 34(b)(8) provides that a claim for litigation costs "shall not be included in the petition in a deficiency or liability action", so that the petition filing could not constitute a qualified offer.  Finally, sec. 7430(c)(4)(E)(ii)(I) provides that the qualified offer alternative is not available to "any judgment issued pursuant to a settlement"; the instant case has been settled.

Respondent contends that Petitioner failed to satisfy the qualified offer requirement.  Amazingly, if Petitioner goes down that path of qualified offer, according to IRS Bulletin:  2004-5, Feb 2, 2004 T.D. 9106, Awards of Attorney Feeds and other costs based upon qualified offers.  If a qualified offer had been made and accepted attorney fees would not be awarded.  As such, why would anyone ever want to submit a qualified offer, when the position of Respondent is not to pay legal fees upon such a request, even though Case law provides for such an award.  [Reproduced literally.]

Substantially the same statement appears in petitioner's answering legal memorandum.

The qualified offer provision allows a taxpayer that is not a "prevailing party under any other provision of this paragraph" (sec. 7430(c)(4)(E)(iv)) to nevertheless be treated as a prevailing party to some extent, if the taxpayer has made a qualified offer, the case was not settled, and the taxpayer's liability ends up as less than or equal to the liability under the qualified offer.  Accordingly, the qualified offer provision does not remove benefits that a taxpayer would otherwise be entitled to; the provision, rather, adds a possibility of a benefit where the taxpayer would otherwise not be entitled to any award.  Also, the provision appears to be designed to encourage the Commissioner to take seriously any taxpayer settlement offer.  See discussion in Haas & Associates Accountancy Corp. v. Commissioner, 117 T.C. 48, 59 (2001), affd. 55 Fed. Appx. 476 (9th Cir. 2003).

In the instant case the qualified offer provisions do not provide an alternate route to "prevailing party" status. See supra note 21. Also, petitioner's efforts to raise the qualified offer provision were so clearly inappropriate and poorly conceived, and petitioner's determination to further discuss the issue in both legal memoranda was so wasteful, that, if we had otherwise determined to award litigation costs, then we would (1) determine how much of Moffatt's charged time was allocable to this diversion and (2) disallow the charges for that time.

E. Other Matters

The foregoing resolves the litigation costs dispute and requires denial of petitioner's motion. But the parties have presented numerous additional matters that may usefully be commented on.

1. Failure To Exhaust Available Administrative Remedies

Respondent contends that petitioner failed to exhaust available administrative remedies in that (a) petitioner failed to respond to the May 16, 2003, letter or otherwise act (file a protest or ask for an Appeals conference) before the notice of deficiency was issued, and (b) "after the case was docketed, petitioner refused to participate in an Appeals conference". Petitioner contends:

> Section 7430(b)(1) provides that in order to recover
> litigation costs, a taxpayer must have taken advantage
> of available administrative remedies. The regulations
> to this section include within this requirement

participation in an Appeals office conference.  See 26 C.F.R. Section 301.7430-1(b)(1)(i).  It is undisputed that, upon receiving the results of the IRS audit, Petitioner's Counsel had a conference with the Appeals division, Cynthia Ace.

Petitioner also contends (a) "a request for legal fees is valid at the administrative level", (b) respondent refused to settle the case unless petitioner waived litigation costs, (c) "Respondent was arguably also in violation of RRA 98[22] as it relates to a lack of fairness to Petitioner", and (d) "The Tax Court should correctly determine that Petitioner did in fact exhaust the administrative remedies available to him.  Haas & Associates Accountancy Corp. v. Commissioner, 55 Fed. Appx. 476."

We agree with petitioner's conclusion even though we disagree with petitioner's analysis.

Section 7430(b)(1) (supra note 15) prohibits the awarding of litigation costs under subsection (a) in the instant case unless the Court determines that petitioner exhausted the administrative remedies available to him within the Internal Revenue Service.

---

[22] We assume petitioner refers to the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685.  Sec. 3101 of that Act (112 Stat. at 727) makes numerous amendments to different parts of sec. 7430(c), but we have not found any amendments made by that Act to sec. 7430(b)(1), relating to the requirement of exhaustion of administrative remedies, and petitioner has not directed our attention to any such amendments.  Nor has petitioner directed our attention to any specific provision of that Act (which extends for 183 pages in the Statutes at Large) that bears on our consideration of the requirement of exhaustion of administrative remedies, even though his reference to "RRA 98" appears in the portion of his answering legal memorandum headed "PETITIONER EXHAUSTED ADMINISTRATIVE REMEDIES".

Petitioner has the burden of proof on this issue.

In his second legal memorandum, petitioner points to the requirements of section 301.7430-1(b)(1)(i), Proced. & Admin. Regs., and states that Moffatt had a conference with Ace and this constituted compliance with the requirements of that regulation. The cited regulation provides as follows:

> (i) The party, prior to filing a petition in the Tax Court or a civil action for refund in a court of the United States (including the Court of Federal Claims), participates, either in person or through a qualified representative described in §601.502 of this chapter, in an Appeals office conference; * * *

The first communication between Moffatt and Ace was on May 24, 2004, 8 months after September 22, 2003, when the petition was filed.  Plainly, petitioner did not participate in an Appeals Office conference, either in person or through Moffatt, "prior to filing a petition in the Tax Court", and so petitioner has not complied with the requirements of section 301.7430-1(b)(1)(i), Proced. & Admin. Regs.

As to petitioner's additional contentions, items (a) and (b) seem to relate to the charge that respondent refused to settle the tax case unless petitioner waived any litigation cost claim. Although petitioner makes the charge, petitioner does not direct our attention to any affidavit or other evidence in the record supporting the charge.  Ace's case activity record, Exhibit 8-J, indicates that Moffatt told her that he would not agree to a settlement unless respondent conceded an award of litigation

costs. On this state of the record, we do not conclude that petitioner's contentions (a) and (b) justify ruling for petitioner on the exhaustion of administrative remedies issue.

As we have noted (supra note 22) petitioner's contention (c), relating to the Internal Revenue Service Restructuring and Reform Act of 1998, does not add anything to the force of his argument.

Finally, we are mystified by petitioner's citation of the Haas & Associates opinion, in which the Court of Appeals for the Ninth Circuit affirmed our holding that the taxpayer therein was not entitled to an award of litigation costs.

Notwithstanding our rejection of all of petitioner's contentions, we conclude that petitioner does qualify under section 301.7430-1(f)(2), Proced. & Admin. Regs., which provides as follows:

> (f) Exception to requirement that party pursue administrative remedies. If the conditions set forth in paragraphs (f)(1), (f)(2), (f)(3), or (f)(4) of this section are satisfied, a party's administrative remedies within the Internal Revenue Service shall be deemed to have been exhausted for purposes of section 7430.

> \* \* \* \* \* \* \*

> (2) In the case of a petition in the Tax Court--

> (i) The party did not receive a notice of proposed deficiency (30-day letter) prior to the issuance of the statutory notice and the failure to receive such notice was not due to actions of the party (such as a failure

to supply requested information or a current mailing address to the district director or service center having jurisdiction over the tax matter); and

(ii) The party does not refuse to participate in an Appeals office conference while the case is in docketed status.

As respondent concedes, petitioner did not receive a "30-day letter". Respondent contends this failure was "because he [petitioner] failed to supply the supporting information requested in the May 16, 2003 letter".

As we have detailed in our findings (supra text at note 7) the May 16, 2003, letter amounted to eight pages of detailed directions on four different forms, plus a copy of Publication 3498. The 3-year limitations period would not expire for almost 35 months. We conclude that, applying section 301.7430-1(f)(2)(i), Proced. & Admin. Regs., to the facts of the instant case, petitioner's failure to receive the 30-day letter was not due to petitioner's actions but to respondent's determination to shortcut the process; it would not be appropriate to allow respondent to cut off petitioner's possible entitlement to benefits by (a) requiring a 30-day letter and (b) refusing to issue a 30-day letter when there was ample time (almost 35 months) to do so.

We next consider section 301.7430-1(f)(2)(ii), Proced. & Admin. Regs. In applying this provision to the instant case we

take into account the definitions that appear in section

301.7430-1(b)(2) and (3), Proced. & Admin. Regs., as follows:

> (2) Participates.  For purposes of this section, a party or qualified representative of the party described in §601.502 of this chapter participates in an Appeals office conference if the party or qualified representative discloses to the Appeals office all relevant information regarding the party's tax matter to the extent such information and its relevance were known or should have been known to the party or qualified representative at the time of such conference.

> (3) Tax matter.  For purposes of this section, "tax matter" means a matter in connection with the determination, collection or refund of any tax, interest, penalty, addition to tax or additional amount under the Internal Revenue Code.

These definitions apply, by their terms, to the entire section, and so apply to section 301.7430-1(f)(2)(ii), Proced. & Admin. Regs.  In the instant case, Ace had received "all relevant information regarding the party's [petitioner's] tax matter" by the time of her May 24, 2004, telephone call with Moffatt. Although there were disputes regarding dependency deductions and litigation costs, "the determination * * * of [petitioner's] tax * * * under the Internal Revenue Code" could be--and, indeed, was--resolved by the information and documents that Ace had already received (albeit indirectly) from petitioner.

From the foregoing, we conclude that petitioner has carried the burden of proving that he satisfied the requirements of the

regulation as to exhaustion of administrative remedies.  See

Corson v Commissioner, 123 T.C. at 211-212; Swanson v.

Commissioner, 106 T.C. at 97-100.[23]

2.  Paid or Incurred

Awards of costs and fees under section 7430(a) are limited

to reasonable litigation costs "incurred".  The attorney fee

component is specifically limited to "fees paid or incurred".

Sec. 7430(c)(1)(B)(iii).[24]  Petitioner does not contend that

section 7430(c)(3)(B)'s exception for pro bono services applies

to the instant case.

Respondent contends that "petitioner has not established

that he has actually paid his attorney or is otherwise liable to

his attorney for payment of the litigation costs claimed."

Petitioner responds by citing provisions of the Equal Access to

Justice Act, and asserts that "Here, the actual time and rate at

which time and expenses were owed was provided.  As such the

request for legal fees is valid."  Petitioner does not assert

that he paid to Moffatt any of the costs claimed in the motion

---

[23] Swanson v. Commissioner, 106 T.C. 76, 98 (1996),
interprets sec. 301.7430-1(e), Proced. & Admin. Regs.  That
paragraph (e) was redesignated "paragraph (f)" by T.D. 9050, par.
3, 2003-1 C.B. 693, 696.  Accordingly, the Swanson analysis
applies now to paragraph (f) of that regulation.

[24] Not all fee-shifting statutes are so limited.  See
discussion in Frisch v. Commissioner, 87 T.C. 838, 843-844
(1986); see also Corrigan v. United States, 27 F.3d 436, 438 (9th
Cir. 1994).

before us.  The instant dispute, then, is whether petitioner
<u>incurred</u> any of the costs.

In order for petitioner to incur a litigation cost, within
the meaning of section 7430, he has to have a legal obligation to
pay that cost.  <u>Grigoraci v. Commissioner</u>, 122 T.C. 272, 277-278
(2004); <u>Swanson v. Commissioner</u>, 106 T.C. at 101-102.  The
corresponding language of EAJA has also been interpreted to
include that requirement.  <u>SEC v. Comserv Corp.</u>, 908 F.2d 1407,
1414 (8th Cir. 1990).

Petitioner does not direct our attention to, and we have not
found, anything in the record that shows that petitioner is
legally obligated to pay to Moffatt the claimed substantial
amounts.  The mere fact that a taxpayer retained counsel who in
fact represented the taxpayer in a proceeding in this Court is
not sufficient to meet this "incurred" requirement of section
7430.  See <u>Grigoraci v. Commissioner</u>, 122 T.C. at 278-279 (and
cases there cited).

We have not been favored with any evidence as to the
agreement between petitioner and Moffatt.  We are not willing to
assume that petitioner and Moffatt entered into an enforceable
agreement which obligates petitioner to pay to Moffatt the
claimed substantial amounts in order to prosecute a $2,890 case.
We conclude that petitioner has failed to carry his burden of
proving that he incurred the claimed Moffatt attorney fees,

within the meaning of section 7430.  The Congress has not created a roving commission to "do justly".  Rather, the Congress enacted a statute that provides for the awarding of costs if, but only if, it has been shown that the requirements of the statute are met.  Compare, e.g., <u>Fla. Country Clubs, Inc. v. Commissioner</u>, 122 T.C. at 74-75, 80-81, with <u>Downing v. Commissioner</u>, T.C. Memo. 2005-73.

Accordingly, even if we had determined that petitioner were the prevailing party, there would not be a basis in the record for the allowance of any amount of litigation costs.

The parties have locked horns on numerous other matters in connection with petitioner's motion.  We have examined their contentions and concluded that, no matter how we resolved any specific contention, none of them would affect the "bottom line" as to petitioner's motion.

<u>An appropriate order and decision will be entered, denying petitioner's motion for litigation costs, as supplemented, and deciding that there is no deficiency and there is an overpayment in the amount claimed on petitioner's tax return</u>.